Christopher R. COKER, Appellant,

v.

Lucinda E. JESSON, Commissioner of
Human Services, Respondent.

No. A11–1817.

Supreme Court of Minnesota.

May 1, 2013.

Rehearing Denied June 21, 2013.

484

Marilyn B. Knudsen, Saint Paul, MN, for appellant.

Lori Swanson, Attorney General, Steven H. Alpert, Assistant Attorney General, and

Nathan A. Brennaman, Deputy Attorney General, Saint Paul, MN, for respondent.

GILDEA, Chief Justice.

In this appeal, appellant Christopher R. Coker challenges the denial of his petition for provisional discharge from civil commitment. Coker was indeterminately committed in 2000 as a Sexually Dangerous Person as a result of a series of sex offenses involving 15 to 17–year–old girls. Coker petitioned for provisional discharge from civil commitment. After weighing the evidence presented by Coker and respondent Commissioner of Human Services at the first-phase hearing, the Supreme Court Judicial Appeal Panel ("Appeal Panel") dismissed Coker's petition under Minn. R. Civ. P. 41.02(b).[1] The court of appeals affirmed the Appeal Panel. *Coker v. Jesson (Coker II),* No. A11–1817, 2012 WL 896434, at \*5–8 (Minn.App. Mar. 19, 2012).

Coker argues that the Appeal Panel and the court of appeals misapplied Minn. R. Civ. P. 41.02(b) when they concluded that Rule 41.02(b) authorized dismissal of Coker's petition for provisional discharge from civil commitment. Coker argues in the alternative that the denial of his petition violated his constitutional right to due process. Because we conclude that the Appeal Panel and the court of appeals erred in applying Minn. R. Civ. P. 41.02(b), we reverse and remand for further proceedings consistent with this opinion.

Coker's long criminal history began when he was 14 years old and includes convictions for criminal sexual conduct, numerous assaults, disorderly conduct, aggravated robberies, and possession of marijuana and crack cocaine. In particular, Coker was convicted of promoting prostitution for coercing a 16–year–old girl to prostitute for him and three counts of third degree criminal sexual conduct for the sexual assaults of three teenage girls in 1991 and 1992.

In 1999, shortly before Coker was to be released from prison, the Hennepin County Attorney filed a petition for judicial commitment under Minn.Stat. §§ 253B.07, subd. 2, 253B.185, subd. 1 (2012), alleging that Coker was a sexual psychopathic personality ("SPP") and a sexually dangerous person ("SDP"). The district court found there was clear and convincing evidence that Coker was a SDP, but insufficient evidence that Coker was a SPP, and committed Coker to the Minnesota Sex Offender Program ("MSOP"). Following the 60–day review required by statute, Coker was committed as a SDP "for an indeterminate period of time." Minn.Stat. § 253B.18, subds. 2–3 (2012).

A person committed as a SDP who seeks full or provisional discharge must petition the Special Review Board ("Review Board") for relief. Minn.Stat. § 253B.185, subd. 9 (2012); *see also* Minn.Stat. § 253B.18, subds. 7, 15 (2012). If the Review Board recommends that the Commissioner deny the committed person's discharge petition, then the committed person may ask the Appeal Panel for reconsideration of the Review Board's recommendation. Minn.Stat. §§ 253B.185, subd. 9(f), 253B.19, subd. 2(b) (2012).

 When appearing before the Appeal Panel, the committed person "bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief." Minn.Stat. § 253B.19, subd. 2(d)

---

1. Coker also petitioned for transfer to a nonsecure facility. The Appeal Panel granted that request, transferring Coker to the Community Preparation Services (CPS) program.

(2012).[2] We have recently described that burden as a "burden of production," which requires the committed person "to come forward with sufficient, competent evidence that, if proven, would entitle the petitioner to relief." *Braylock v. Jesson*, 819 N.W.2d 585, 589 (Minn.2012). The proceeding in which a committed person produces evidence is commonly referred to as a "first-phase hearing." *E.g., Coker II*, 2012 WL 896434, at *2. If the committed person satisfies his burden of production, then the party opposing the petition "bears the burden of proof by clear and convincing evidence that the discharge or provisional discharge should be denied." Minn. Stat. § 253B.19, subd. 2(d). The proceeding in which the opposing party attempts to prove that the discharge petition should be denied is commonly referred to as a "second-phase hearing." *E.g., Coker II*, 2012 WL 896434, at *3.

In 2006, Coker filed a petition with the Commissioner of Human Services under Minn.Stat. § 253B.18, subd. 5 (2012), requesting transfer to a nonsecure Department of Human Services facility, provisional discharge, and discharge.[3] The Commissioner set a hearing on the petition before the Review Board for January 10, 2007. The Review Board considered evidence that Coker had progressed to the MSOP Supervised Integration Unit ("MSI"), was appropriately participating in recreational and social activities as well as treatment groups, was complying with his journaling requirement, and passed his maintenance polygraph. The MSOP treatment team, however, identified Coker as a high risk to reoffend, recommended that he continue in the MSI to participate in on-campus activities, and stated that he needed to continue treatment in a secure facility. The Review Board also noted there was "no realistic less restrictive alternative to Mr. Coker's current placement." The Review Board therefore recommended that the Commissioner deny Coker's petition.

The Commissioner denied Coker's petition on February 20, 2007, and the Appeal Panel affirmed the Commissioner's decision. Coker appealed the denial of his petition to the court of appeals. *See Coker v. Ludeman (Coker I)*, 775 N.W.2d 660 (Minn.App.2009), *rev. dism'd* (Minn. Feb. 24, 2010). The court of appeals concluded that the Appeal Panel erred by requiring Coker to show, by a preponderance of the evidence, that he satisfied the statutory criteria for discharge. *Id.* at 664. The statute in effect at the time, Minn.Stat. § 253B.19, subd. 2(d) (2008), required the

---

**2.** Coker's petition, originally submitted in 2006, was filed under an earlier version of Minn.Stat. § 253B.19, subd. 2(d). We recently ruled, however, that "the Legislature intended only to clarify preexisting law" when it amended the statute in 2010 because in both versions, the petitioner has only a burden of production and the party opposing discharge retains the burden of persuasion. *Braylock v. Jesson*, 819 N.W.2d 585, 588, 591 (Minn.2012). Because the Legislature did not substantively change, and therefore only clarified, the law, we held that it was proper to evaluate a petition filed prior to the amendment under the 2010 version of Minn.Stat. § 253B.19, subd. 2(d). *Braylock*, 819 N.W.2d at 591. Likewise, Coker's petition is properly evaluated under the version of Minn.Stat. § 253B.19, subd. 2(d) as amended in 2010.

**3.** A "committed person" may file "[a] petition for a reduction in custody" with the commissioner at any time, except that a patient may not file a petition within six months of the initial commitment or the final disposition and appeal of a previous petition. Minn.Stat. § 253B.18, subd. 5(a). A "reduction in custody" is "transfer from a secure treatment facility, discharge, and provisional discharge." *Id.* subd. 4c(a) (2012). Petitions are reviewed by the Review Board which is required to "hold a hearing on each petition prior to making its recommendation to the commissioner." *Id.* subd. 5(c).

party seeking discharge to "bear[ ] the burden of going forward with the evidence," but the court of appeals concluded that the Appeal Panel had erroneously required Coker to make a prima facie case for transfer or discharge.[4] *Coker I*, 775 N.W.2d at 664. The court of appeals concluded that this burden was higher than the statutory burden, which only required the petitioner to "present evidence on each element sufficient to avoid judgment as a matter of law." *Id.* at 664–65. The court therefore reversed the Appeal Panel and remanded the case for a hearing with the correct evidentiary burden. *Id.* at 665.

On remand, the Appeal Panel transferred Coker to the MSOP Community Preparation Services ("CPS") program and remanded Coker's request for provisional discharge to the Review Board because his discharge plan was outdated. The Review Board again recommended that Coker's petition for provisional discharge be denied and Coker appealed to the Appeal Panel.

At the first-phase hearing, the Appeal Panel heard testimony from Coker, his fiancée, and the independent examiner, Dr. James Alsdurf, Ph.D. Coker testified that he was ready to be released into the community through provisional discharge. He stated that outpatient sex offender treatment would better address his needs by allowing him to get a job, permitting him more access to his family, and facilitating family therapy with his fiancée, all of which were not readily available at CPS. Additionally, Coker testified that he did not present any danger to the community. Coker did, however, acknowledge that the

locations in which he proposed to live had not accepted him as a resident and that outpatient sex offender treatment was not available to him because he was only in the first of three stages of the CPS program.

Coker's fiancée testified that she met Coker in 2002 when he was in the Moose Lake facility. She further testified that the couple became engaged in 2003, they have a good relationship, and she is willing to participate in therapy by telephone with him.

Dr. Alsdurf testified that Coker had made considerable progress and had accomplished more than anyone else that he had evaluated at MSOP. Dr. Alsdurf stated that Coker's 2010 penile plethysmograph (PPG) produced a flatline response. In reference to one of Coker's earlier PPG tests that had produced a flatline, Dr. Alsdurf explained that "our concern about sexual deviance has essentially remitted." Nevertheless, Dr. Alsdurf opined that Coker was not ready for provisional discharge because he had not recently progressed in treatment at CPS.[5] Dr. Alsdurf noted that Coker saw himself as done with treatment and was often combative with his treatment team, even though there was no evidence that Coker's treatment team was attempting to impede his progress.

Over Coker's objection, the Appeal Panel allowed the Commissioner to admit numerous exhibits at the first-phase hearing. More specifically, the Commissioner presented the following evidence. A polygraph suggested that Coker had tried to influence the results of the PPG through

---

4. After *Coker I*, the Legislature amended Minn.Stat. § 253B.19, subd. 2(d), to explain the "burden of going forward with the evidence" by adding the phrase, "which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief." Act of May 10, 2010, ch. 300, § 27, 2010 Minn. Laws 747, 763–64.

5. By the time of his most recent testimony, Dr. Alsdurf had evaluated Coker 8 to 10 times over the course of the last 12 years, including during Coker's initial commitment proceedings.

deception. Coker had refused to discuss the polygraph result. Additionally, Coker demonstrated a lack of social awareness and poor interpersonal problem-solving skills when he called his fiancée 203 times and spent 23.5 hours on the phone in one week. The Commissioner's exhibits also noted that Coker had regressed in his treatment by being less open to feedback and engaging in irrational reactions to staff decisions.

At the conclusion of the first-phase hearing, the Commissioner moved to dismiss Coker's petition under Minn. R. Civ. P. 41.02(b).[6] After weighing the evidence presented by the parties, the Appeal Panel issued a written order granting the motion to dismiss. In its written order, the Appeal Panel found that although Coker had made "considerable progress in treatment," resulting in his transfer to CPS, the exhibits submitted by the Commissioner demonstrated that Coker had recently shown "significant difficulty in managing his level of stress and emotional discomfort." The exhibits further demonstrated "a lack of social awareness and a deficit of interpersonal problem-solving skills, that, in part, led to his mistreatment and sexual subjugation of women in the past." The Appeal Panel also relied on Dr. Alsdurf's

testimony opposing Coker's request for provisional discharge. Specifically, the panel cited Dr. Alsdurf's opinion that Coker was not ready for provisional discharge due to his lack of progress (and regressions) in CPS and Coker's statement that he was "done" with treatment. Based on its findings, the Appeal Panel concluded that Coker "ha[d] not presented any competent evidence to meet his initial burden of production to establish a prima facie case for a provisional discharge, thereby avoiding judgment as a matter of law."

Coker appealed the Appeal Panel's dismissal order to the court of appeals, arguing that the Appeal Panel erred by concluding that he failed to satisfy his burden of production under Minn.Stat. § 253B.19, subd. 2(d).[7] After reviewing all the evidence presented at the first-phase hearing, the court of appeals affirmed, stating that "[t]he evidence presented here amply supports the judicial appeal panel's determination that [Coker] failed to meet his burden of production." *Coker II*, 2012 WL 896434, at *6. The court of appeals emphasized the following facts. The Appeal Panel credited "Dr. Alsdurf's testimony, and not that of [Coker] or his fiancé." *Id.* Dr. Alsdurf's unequivocal testimony that Coker was not ready for provisional discharge

---

**6.** Rule 41.02(b) states that "[a]fter the plaintiff has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law, the plaintiff has shown no right to relief.... If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52.01." Minn. R. Civ. P. 41.02(b).

**7.** Coker also argued on appeal that the burden-shifting mechanism of Minn.Stat. § 253B.19, subd. 2(d) is unconstitutional because it places the initial burden of going forward with evidence on the individual seeking a reduction in civil commitment. *Coker*

*II*, 2012 WL 896434, at *8. The court of appeals ruled that because Coker "did not raise this argument to the district court and because '[t]he law is clear in Minnesota that the constitutionality of a statute cannot be challenged for the first time on appeal,' this issue is deemed waived." *Id.* (quoting *State v. Engholm*, 290 N.W.2d 780, 784 (Minn.1980)). Further, the court of appeals concluded that even if the issue was not waived, the burden shifting did not "violate the constitution's double-jeopardy, substantive-due-process, or equal-protection clauses, and is not unconstitutionally vague." *Id.* Because we conclude that reversal and remand is required on other grounds, we do not address the waiver or constitutional issues.

was "unrebutted." *Id.* at \*8. And the exhibits submitted by the Commissioner showed that "Coker ha[d] regressed in treatment." *Id.* at \*6 (internal quotation marks omitted).

We granted Coker's petition for review. On appeal, Coker argues that the Appeal Panel and court of appeals erred in dismissing his petition under Minn. R. Civ. P. 41.02(b). Relying on *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), Coker also argues that Minn.Stat. § 253B.19, subd. 2(d), violates his constitutional right to due process to the extent that it imposes a burden on committed persons to demonstrate that they are no longer in need of confinement. We turn first to Coker's argument that the Appeal Panel's erroneous application of Rule 41.02(b) requires reversal. *See State v. Bourke*, 718 N.W.2d 922, 926 (Minn. 2006) ("Our general practice is to avoid a constitutional ruling if there is another basis on which a case can be decided." (citation omitted) (internal quotation marks omitted)).

Coker argues that the Appeal Panel and court of appeals erred in relying on Minn. R. Civ. P. 41.02(b) to dismiss his petition. Specifically, Coker argues that the Appeal Panel erred when it did not view the evidence presented at the first-phase hearing in a light most favorable to Coker before granting the Commissioner's motion to dismiss under Rule 41.02(b). Although the Commissioner's brief does not squarely address this aspect of Coker's Rule 41.02(b) argument, the Commissioner argues that an Appeal Panel may weigh the evidence when considering a motion to dismiss brought under Rule 41.02(b). Construction and application of the Minnesota Rules of Civil Procedure involves a question of law, which we review de novo. *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn.2008).

Rule 41.02(b) of the Minnesota Rule of Civil Procedure states in relevant part:

> After the plaintiff has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law, the plaintiff has shown no right to relief.

Minn. R. Civ. P. 41.02(b). In the context of a jury trial, we have said that Rule 41.02(b) requires a court to view the evidence in a light most favorable to the plaintiff. *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn.1980). In *Paradise*, we explained that "[t]he trial court's dismissal of plaintiff's complaint under Minn. R. Civ. P. 41.02(b) is equivalent to a directed verdict as embodied in Minn. R. Civ. P. 50.01," and therefore the standards for directing a verdict apply to motions to dismiss under Rule 41.02(b). 297 N.W.2d at 155. The directed verdict standards "require the determination of whether, as a matter of law, the evidence is sufficient to present a fact question for the jury's consideration." *Id.* In making such a determination, "the court must view the credibility of the evidence, and every inference which may fairly be drawn therefrom, in favor of the adverse party." *Id.*

Also relevant to Rule 41.02(b)'s application in this case is the provision for actions tried to the court without a jury ("court-trial provision"). The court-trial provision reads: "In an action tried by the court without a jury, the court as trier of fact may then determine the facts and render judgment against the plaintiff...." Minn. R. Civ. P. 41.02(b). When "the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52.01." *Id.* We have

rejected the argument that a court must view the evidence in a light most favorable to the plaintiff when considering a motion to dismiss under the court-trial provision of Rule 41.02(b). *See State ex rel. Burnquist v. Bollenbach,* 241 Minn. 103, 109, 63 N.W.2d 278, 283 (1954). In *Bollenbach,* we explained that a court is allowed to judge the credibility of the witnesses and make findings of fact when considering a motion to dismiss under the court-trial provision of Rule 41.02(b). *Id.* Under the court-trial provision, therefore, the court is not required to view the evidence in the light most favorable to the plaintiff.

Our precedent thus reflects a distinction in how the evidence is viewed between jury and court trials. This distinction is apt in most civil cases because the plaintiff generally bears both the burden of production and the burden of persuasion. *See Henderson ex rel. Henderson v. Shinseki,* — U.S. —, —, 131 S.Ct. 1197, 1206, 179 L.Ed.2d 159 (2011) (explaining that in ordinary civil litigation plaintiffs bear both the burden of production and persuasion); 31A C.J.S. *Evidence* § 195 (2008) (explaining that "[i]n general, the party invoking the judicial process in its favor bears the burden of production and persuasion").

■■■■ But in the context of a petition for provisional discharge, the committed person does not bear the burden of persuasion; the committed person bears only a burden of production. *Braylock,* 819 N.W.2d at 589. More specifically, section 253B.19, subdivision 2, requires civilly committed persons to come forward only with sufficient, competent evidence that, *if proven,* would entitle the petitioner to relief. *Id.* Allowing the fact-finder to weigh the evidence, consistent with the court-trial provision, effectively elevates the burden imposed on the committed person beyond that set forth in section 253B.19, subdivision 2. Moreover, a burden of pro-

duction does not generally allow a credibility assessment. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (explaining that a burden of production can involve no credibility assessment); *Jacobson v. $55,900 in U.S. Currency,* 728 N.W.2d 510, 523 (Minn.2007) (stating that "as a general matter, a district court should not engage in a qualitative evaluation or weighing of the evidence when deciding whether a claimant has produced sufficient evidence to rebut the statutory presumption"). Under the court-trial provision, however, the fact finder is permitted to make credibility assessments as part of its weighing of the evidence. *See Bollenbach,* 241 Minn. at 108–09, 63 N.W.2d at 282–83.

■■■■ Because application of the court-trial provision of Minn. R. Civ. P. 41.02(b) allows the fact-finder to weigh the evidence and make credibility determinations, application of the provision to a committed person's petition for discharge conflicts with Minn.Stat. § 253B.19, subd. 2(d). When a "conflict" exists between the civil commitment statute and a rule of civil procedure, the "inconsistency renders the rule inapplicable" to the civil commitment proceeding. *In re Civil Commitment of Lonergan,* 811 N.W.2d 635, 641 (Minn. 2012) (citation omitted) (internal quotation marks omitted). *See* Minn. R. Civ. P. 81.01(a) (providing that the rules of civil procedure do not apply to enumerated statutory proceedings, which include civil commitment cases, insofar as the statute is inconsistent or in conflict with the rule). We therefore conclude that the court-trial provision of Minn. R. Civ. P. 41.02(b) does not apply to a petition for provisional discharge from civil commitment. Consequently, we hold that the Appeal Panel may not weigh the evidence or make credibility determinations when considering a

motion to dismiss under Rule 41.02(b) made at the close of a first-phase hearing. Instead, the Appeal Panel is required to view the evidence produced at the first-phase hearing in a light most favorable to the committed person.

The Appeal Panel here did not view the evidence produced at the first-phase hearing in a light most favorable to Coker. The written dismissal order issued by the Appeal Panel does not consider whether a trier of fact—who rejects the Commissioner's exhibits and Dr. Alsdurf's opinion that Coker was not ready to proceed to provisional release—could find that Coker was entitled to provisional discharge based on the evidence in the record that is favorable to Coker.[8] Instead, the Appeal Panel considered and weighed *all* the evidence offered at the first-phase hearing, relying heavily on the Commissioner's numerous exhibits and Dr. Alsdurf's opinion that Coker was not ready to proceed to provisional release. Based on this record, it is apparent that the Appeal Panel did not view the evidence produced at the first-phase hearing in a light most favorable to Coker.

The court of appeals' analysis is similar. In affirming the Appeal Panel's dismissal order, the court of appeals' analysis emphasized the following facts. The Appeal Panel credited "Dr. Alsdurf's testimony, and not that of [Coker] or his fiancé." Dr. Alsdurf's unequivocal testimony that Coker was not ready for provisional discharge was "unrebutted." And the exhibits submitted by the Commissioner showed that "Coker ha[d] regressed in treatment." When considering the evidence that was favorable to Coker, the court of appeals cited opposing evidence to diminish the persuasive power of the favorable evidence. Like the Appeal Panel, the court of appeals also failed to view the evidence produced at the first-phase hearing in a light most favorable to Coker.[9]

 The Commissioner argues, however, that reversal is not required in this case because "even if this Court were to discount all of the Commissioner's exhibits and credit Coker's various offers of proof, Coker still failed to meet his burden of production." While dismissal under Minn. R. Civ. 41.02(b) might be appropriate when the committed person does not meet his burden of production, in this case Coker met his burden of production.

To support the claim that Coker did not meet his burden of production, the Commissioner relies on the following facts. "Coker presented Dr. Alsdurf as part of his prima facie case"; "Dr. Alsdurf provided the only sworn testimony that was competent to address Coker's treatment needs, his risk to public safety, and whether he was entitled to the relief he requested"; and "Dr. Alsdurf's opinion that Coker was not ready for provisional discharge was unequivocal and unrebutted."

**8.** The evidence offered in support of the petition for provisional discharge included Dr. Alsdurf's testimony that Coker had made considerable progress and had accomplished more than anyone else that he had evaluated at MSOP, the PPG test results, and the testimony of Coker and his fiancée.

**9.** The Appeal Panel's decision to allow the Commissioner to submit exhibits during the first-phase hearing unnecessarily complicated the analysis of the Commissioner's subse-quent motion to dismiss under Minn. R. Civ. P. 41.02(b). More specifically, the submission of competing facts by an adverse party makes the application of the "viewed in a light most favorable to the committed person" standard more difficult to apply. Consequently, the better practice would be to wait until the second-phase hearing before receiving the exhibits, testimony, and other evidence offered by the Commissioner.

■ The Commissioner's argument is unpersuasive because it assumes that a trier of fact must accept or reject all of Dr. Alsdurf's testimony. It is well established, however, that a trier of fact is free to accept part and reject part of a witness's testimony. *State v. Johnson*, 568 N.W.2d 426, 436 (Minn.1997) (citing *State v. Poganski*, 257 N.W.2d 578, 581 (Minn.1977)); *see also State v. Stevens*, 248 Minn. 309, 313, 80 N.W.2d 22, 26 (1956) (noting that even "if the jurors believe that a witness has knowingly and willfully testified falsely as to a material fact, ... they may believe or disbelieve his testimony as to other facts as they deem it worthy or unworthy of belief").

When the evidence produced by Coker at the first-phase hearing is viewed in a light most favorable to him, a trier of fact could reject Dr. Alsdurf's opinion that Coker was not ready for provisional discharge, and yet accept Dr. Alsdurf's more favorable testimony, which included Dr. Alsdurf's statements that Coker had made considerable progress and had accomplished more than anyone else that he had evaluated at MSOP, and that a flatline PPG result could evidence a remission of sexual deviance. This evidence, together with the other evidence Coker produced, when construed in a light most favorable to Coker, satisfies Coker's burden of production. *See Braylock*, 819 N.W.2d at 590 (discussing the burden of production).

Because the Appeal Panel committed reversible error in applying Minn. R. Civ. P. 41.02(b) by failing to view the evidence produced at the first-phase hearing in a light most favorable to Coker and by weighing the evidence produced during the first-phase of the hearing, we reverse and remand to the Appeal Panel for further proceedings consistent with this opinion.[10]

We express no opinion as to whether Coker's petition should be granted after the second-phase hearing when the State bears the burden of proving that the need for Coker's confinement continues. *See* Minn.Stat. § 253B.19, subd. 2(d); *In re Blodgett* 510 N.W.2d 910, 917 (Minn.1994) (noting that in "a proceeding where a committed person is seeking a discharge from commitment ... the burden of proof should be on the state to show by clear and convincing evidence that commitment should continue"). This conclusion is for the Appeal Panel to make after the statutory process has been followed. *See Call v. Gomez*, 535 N.W.2d 312, 319 (Minn.1995) ("So long as the statutory discharge criteria are applied in such a way that a person subject to commitment ... is confined for only so long as he or she continues both to need further inpatient treatment and supervision for his sexual disorder and to pose a danger to the public, continued commitment is justified because [it] bears a reasonable relation to the original reason for commitment.").[11]

Reversed and remanded.

---

**10.** The Commissioner concedes that if the error in this case requires reversal, the proper remedy is a remand to the Appeal Panel for further proceedings consistent with this opinion.

**11.** Given our conclusion that the Appeal Panel's erroneous application of Rule 41.02(b) requires reversal, we do not reach Coker's constitutional argument. *See State v. Bourke*, 718 N.W.2d 922, 926 (Minn.2006).