*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0102**

Dezeray Marie Roblero-Barrios,
Appellant,

vs.

Lucinda Jesson, Commissioner of Human Services,
Respondent.

**Filed July 14, 2014
Affirmed
Smith, Judge**

Olmsted County District Court
File No. 55-P6-99-002869

David A. Jaehne, West St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, Uzodima Franklin Aba-Onu, Assistant Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, Geoffrey A. Hjerleid, Assistant County Attorney, Rochester, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Hudson, Judge; and

Smith, Judge.

**U N P U B L I S H E D  O P I N I O N**

**SMITH**, Judge

We affirm the judicial appeal panel's dismissal of appellant's petition for a full discharge or a provisional discharge from her civil commitment as a sexually dangerous person because appellant failed to introduce any competent evidence that she meets the statutory criteria for relief.

**FACTS**

After serving time in prison for convictions of second-degree assault and second-degree attempted criminal-sexual conduct, based on an incident involving a six-year-old boy in the restroom of a retail store, appellant Dezeray Marie Roblero-Barrios was indeterminately committed to the Minnesota Sex Offender Program (MSOP) as a sexually dangerous person in June 2001. She is in the first phase of treatment at MSOP.

In June 2012, Roblero-Barrios petitioned the special review board (SRB) for a full discharge or a provisional discharge from civil commitment, and submitted a "predischarge" plan from the department of corrections (DOC). The SRB conducted a hearing on the petition. It found that Roblero-Barrios's treatment history has been "inconsistent and marred" by her behavior, which has included "inappropriate sexual boundaries with peers; difficulty managing emotions; motivational problems; rule violations; aggressive/violent behavior; and sexual acting out." It also found that Roblero-Barrios has been revoked to the DOC four times for assaultive behavior and noncompliance with treatment and that, as a result, she has spent "significant time" outside of treatment at MSOP. The SRB noted that Olmsted County, MSOP staff,

Roblero-Barrios's treatment team, and the risk assessor who worked with Roblero-Barrios all opposed her petition. The SRB recommended that the petition be denied.

Roblero-Barrios requested that a judicial appeal panel reconsider the SRB's recommendation. The appeal panel appointed Thomas L. Alberg, Ph.D., to independently review records and psychologically examine Roblero-Barrios. Dr. Alberg submitted an evaluation report, and the appeal panel held a hearing at which Dr. Alberg and Roblero-Barrios testified.

Dr. Alberg wrote in his report that he does not support Roblero-Barrios's request to be moved to a less restrictive setting. He stated that, because Roblero-Barrios has been revoked and sent to the DOC numerous times, she has spent a "relatively short" period of time in treatment since her commitment in 2001. Although Dr. Alberg noted that Roblero-Barrios "has been engaged in treatment and appears to be doing relatively well" since returning from her most recent incarceration, he stated that phase one of MSOP "still appears to be an appropriate placement" for her. Dr. Alberg wrote that Roblero-Barrios "needs to be able to demonstrate significant ability to abide by programming rules and be able to demonstrate responsible behavior before [she] moves to phase two." He concluded that "there is no reason to believe that [Roblero-Barrios] would be able to receive treatment in a non-secure setting without any danger to the public."

Dr. Alberg testified at the appeal panel hearing that he concurred with Roblero-Barrios's mental health diagnoses. He stated that Roblero-Barrios's scores on tests indicated that she has several dynamic risk factors, which indicate an increased likelihood of reoffending, and a "high degree of psychopathy." Dr. Alberg opined that Roblero-

3

Barrios still needs in-patient sex-offender treatment and supervision, and he did not believe any other treatment programs would take her in her current condition. He added that "there really hasn't been any significant change from [Roblero-Barrios's] initial commitment" and reiterated that she would not be able to receive treatment in a nonsecure setting without presenting a danger to the public.

Roblero-Barrios testified that she requested discharge because she believes she has progressed far enough through the program to warrant outpatient treatment. She admitted that she still needs sex-offender treatment and stated that she would like to move to Rochester Transitional Living Center or Alpha Human Services in Minneapolis. She acknowledged that she had not been admitted to either program. Roblero-Barrios also stated that her core treatment group is considered advanced and has begun some work for the second phase of MSOP treatment. She said that she receives daily positive reinforcement and support from staff for her changed behavior.

At the close of Roblero-Barrios's case, the commissioner of human services moved to dismiss Roblero-Barrios's petition under Minn. R. Civ. P. 41.02(b) and Minn. Stat. § 253D.28, subd. 2(d) (Supp. 2013).[1] The appeal panel granted the motion and denied Roblero-Barrios's petition.

---

[1] In 2013, the legislature recodified the statutes governing civil commitment of sexually dangerous persons. *See* 2013 Minn. Laws, ch. 49 (codified at Minn. Stat. ch. 253D). Here, we cite the current versions of the statutes because, for purposes of this case, the legislature merely clarified pre-existing law without making any substantive changes. *See Braylock v. Jesson*, 819 N.W.2d 585, 588–89 (Minn.2012) .

4

**D E C I S I O N**

We review de novo a judicial appeal panel's dismissal of a civil-commitment discharge petition under Minn. R. Civ. P. 41.02(b). *Larson v. Jesson*, ___ N.W.2d ___, ___, 2014 WL 2565834, at *2 (Minn. App. June 9, 2014). A person who is committed as a sexually dangerous person may petition the special review board for a discharge or provisional discharge from commitment. Minn. Stat. § 253D.27, subds. 1, 2 (Supp. 2013). "If the special review board recommends that the commissioner deny the committed person's discharge petition, then the committed person may request reconsideration by the judicial appeal panel." *Larson*, 2014 WL 2565834, at *2. The committed person may be fully discharged only if the judicial appeal panel determines that she "is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision." Minn. Stat. § 253D.31 (Supp. 2013). The judicial appeal panel must consider "whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the committed person in adjusting to the community." *Id.* "If the desired conditions do not exist, the discharge shall not be granted." *Id.*

Likewise, the committed person cannot be provisionally discharged unless she "is capable of making an acceptable adjustment to open society." Minn. Stat. § 253D.30, subd. 1(a) (Supp. 2013). Two factors to be considered when deciding whether to grant a provisional discharge are:

> (1) whether the committed person's course of treatment and present mental status indicate there is no longer

5

> a need for treatment and supervision in the committed person's current treatment setting; and
>
> (2) whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community.

*Id.*, subd. 1(b) (Supp. 2013).

A petitioner before an appeal panel "bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief." Minn. Stat. § 253D.28, subd. 2(d). This is "only a burden of production." *Coker v. Jesson*, 831 N.W.2d 483, 490 (Minn. 2013). The petitioner must "come forward only with sufficient, competent evidence that, *if proven*, would entitle the petitioner to relief." *Id.* "If the committed person satisfies [her] burden of production, then the party opposing the petition 'bears the burden of proof by clear and convincing evidence that the discharge or provisional discharge should be denied.'" *Id.* at 486 (quoting Minn. Stat. § 253B.19, subd. 2(d) (2012)).

The commissioner may move to dismiss the petition under Minn. R. Civ. P. 41.02(b) after the petitioner's presentation of evidence is complete. *See id.* at 488. The relevant portion of the rule provides:

> After the plaintiff has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law, the plaintiff has shown no right to relief . . . .

Minn. R. Civ. P. 41.02(b); *see also Coker*, 831 N.W.2d at 490-91 (holding that subsequent sentences of Minn. R. Civ. P. 41.02(b) do not apply because they conflict with the commitment statute).

When deciding whether the petitioner has satisfied the burden of production, the appeal panel must "view the evidence produced at the first-phase hearing in a light most favorable to the committed person." *Coker*, 831 N.W.2d at 491. It "may not weigh the evidence or make credibility determinations." *Id.* at 490. A trier of fact viewing the evidence in a light most favorable to the petitioner can reject an independent examiner's opinion that the petitioner is not ready for discharge while also accepting the examiner's more favorable testimony. *See id.* at 492.

The appeal panel here concluded that Roblero-Barrios "has not produced any competent evidence to meet her initial burden to establish a prima facie case for a discharge or provisional discharge." Roblero-Barrios insists that this conclusion was wrong. She relies solely on *Coker* to argue that Dr. Alberg's and her own testimony, when viewed in the light most favorable to her, satisfied her burden of production. But Roblero-Barrios's evidence is significantly distinguishable from that in *Coker*.

Testimony from Coker's independent examiner established that Coker had made "considerable progress" in MSOP. *Id.* at 487. Dr. Alberg testified that Roblero-Barrios has made "some" progress. Testimony from Coker's examiner established that Coker "had accomplished more than anyone else that he had evaluated at MSOP." *Id.* Dr. Alberg said that Roblero-Barrios has had "some ability to participate in the program" and "some awareness of things such as an offense cycle." Testimony from Coker's examiner

7

established that one of Coker's test results "could evidence a remission of sexual deviance." *Id.* at 487, 492. Dr. Alberg did not say the same about Roblero-Barrios. The select portions of Dr. Alberg's testimony that were favorable did not establish that Roblero-Barrios is capable of making an acceptable adjustment to open society.

Neither did Roblero-Barrios's own testimony. As she highlights, Roblero-Barrios testified that she believes she has progressed far enough in MSOP, she is in an advanced core group of phase one that has started some phase-two goals, she receives satisfactory or better scores in the program, and she receives positive feedback from MSOP workers. While suggesting progress, these statements fail to demonstrate that Roblero-Barrios no longer needs MSOP treatment. They present no information about the current state of her condition or what treatment she would receive outside MSOP.

Roblero-Barrios also insists that she submitted a provisional discharge plan, as required for a provisional discharge. *See* Minn. Stat. § 253D.30, subd. 1(b)(2). The record reflects that she completed a predischarge plan with the DOC. The special review board considered it, as did Dr. Alberg. But to support her petition, the plan must be "developed, implemented, and monitored by the executive director" of MSOP. Minn. Stat. §§ 246B.01, subd. 2c, 253D.02, subd. 7, 253D.30, subd. 2 (Supp. 2013). And as the appeal panel noted, Roblero-Barrios "has yet to reach the phase of treatment where a provisional discharge plan is worked on with the [MSOP] treatment team." Therefore, Roblero-Barrios's DOC predischarge plan is insufficient.

Although an appeal panel can reject an independent examiner's unsupportive testimony and accept the examiner's favorable statements, the petitioner still has the

burden of producing evidence to meet the statutory discharge standards. Roblero-Barrios failed to satisfy her burden. Her testimony and the favorable portions of Dr. Alberg's testimony did not demonstrate that she is capable of making an acceptable adjustment to open society. At best, they established that Roblero-Barrios has had some positive results during the earliest stage of treatment. Even viewing the evidence in the light most favorable to Roblero-Barrios, she has failed to produce evidence that, if proven, would entitle her to a provisional discharge. *See* Minn. Stat. § 253D.30, subd. 1(a). Roblero-Barrios has therefore also failed to produce evidence that, if proven, would entitle her to a discharge. *See* Minn. Stat. § 253D.31. The appeal panel did not err by granting the commissioner's motion to dismiss Roblero-Barrios's petition.

**Affirmed.**