*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0141**

David Leroy Gamble,
Appellant,

vs.

Emily Johnson Piper,
Commissioner of Human Services,
Respondent.

**Filed June 27, 2016
Affirmed
Halbrooks, Judge**

Ramsey County District Court
File No. 62-MH-PR-09-479

Mary Margaret Huot, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, Kelly Meehan, Assistant Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Stephen P. McLaughlin, Assistant County Attorney, St. Paul, Minnesota (for respondent)

　　　Considered and decided by Halbrooks, Presiding Judge; Cleary, Chief Judge; and

Smith, John, Judge.*

─────────────────

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Appellant challenges the judicial appeal panel's order denying and dismissing his petition for full discharge from civil commitment as a sexually dangerous person (SDP). Because we conclude that appellant has not met his burden of production under the statutory requirements, we affirm.

## FACTS

Appellant David Leroy Gamble was committed to the Minnesota Sex Offender Program (MSOP) on December 15, 2009 and signed a stipulation on May 25, 2010, agreeing, in the presence of counsel, to an initial and final judicial commitment as an SDP. In July 2013, Gamble petitioned the special review board for transfer to community preparations services, provisional discharge, or full discharge from civil commitment. In December 2013, Gamble amended his petition to request full discharge only, arguing that (1) he does not meet the criteria for involuntary civil commitment because he has no mental illness or severe personality disorder, (2) he is at "an extremely low percentage rate to recidivate," and (3) additional factors and mitigating circumstances warrant his release.

After a hearing, the special review board recommended that Gamble's petition for full discharge be denied, concluding that

> Mr. Gamble is not capable of making an acceptable adjustment to open society in accordance with the factors provided under Minnesota Statutes section 253B.185, subdivisions 12 and 18 (2012) because (1) his course of treatment and present mental status indicate that he continues

2

to need treatment and supervision in his current treatment setting, and (2) the conditions of his provisional discharge and full discharge will not provide a reasonable degree of protection to the public and will not enable him to adjust successfully to the community.

Gamble requested reconsideration by a judicial appeal panel. The panel appointed Amanda Powers-Sawyer, Psy.D., LP as an independent examiner. In the course of the hearing, the panel received two exhibits, including Dr. Powers-Sawyer's report following her examination of Gamble.

After Gamble presented his case, respondent Commissioner of Human Services moved to dismiss his petition under Minn. R. Civ. P. 41.02(b) and Minn. Stat. § 253D.28, subd. 2(d) (Supp. 2015). The judicial appeal panel granted the commissioner's motion and denied Gamble's request for a full discharge from civil commitment, stating:

> Appellant has failed to make even a minimal showing that he is no longer a danger to the public. Although Dr. Powers-Sawyer testified favorably regarding Appellant's treatment prognosis and his progress thus far, she does not support his request. Appellant did not present a written discharge plan. Appellant has only a general discharge plan, to live with his girlfriend, attend outpatient treatment and obtain employment. The lack of specificity does not demonstrate how Appellant would make an adjustment to open society or what safeguards are in place for public protection. Without any specific plans in place, Appellant has failed to present any evidence that he is capable of making an open adjustment to society, especially after such a period of institutionalization.
>
> Appellant did not provide any evidence in support of the elements for discharge. As a result, Appellant has not produced any competent evidence to meet his initial burden to establish a prima facie case for a discharge, thereby avoiding judgment as a matter of law.

3

This appeal follows.

## D E C I S I O N

Gamble challenges the judicial appeal panel's denial and dismissal of his petition for full discharge. "[W]hen a judicial appeal panel dismisses a [civil-commitment discharge] petition under Minn. R. Civ. P. 41.02(b), the appropriate standard of appellate review is de novo." *Larson v. Jesson*, 847 N.W.2d 531, 534 (Minn. App. 2014).

A person committed as an SDP may petition the special review board for a discharge. Minn. Stat. § 253D.27, subd. 2 (2014). If the board recommends denial of the petition, the person may seek reconsideration from the judicial appeal panel. *Larson*, 847 N.W.2d at 534. A petitioner before the judicial appeal panel "bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief." Minn. Stat. § 253D.28, subd. 2(d). This is "only a burden of production." *Coker v. Jesson*, 831 N.W.2d 483, 490 (Minn. 2013). The petitioner must "come forward only with sufficient, competent evidence that, *if proven*, would entitle the petitioner to relief." *Id.* "If the committed person satisfies his burden of production, then the party opposing the petition bears the burden of proof by clear and convincing evidence that the discharge or provisional discharge should be denied." *Id.* at 486 (quotation omitted).

"After the [petitioner] has completed the presentation of evidence, the commissioner may move to dismiss the petition under Minn. R. Civ. P. 41.02(b)." *Larson*, 847 N.W.2d at 535. Dismissal under Minn. R. Civ. P. 41.02(b) is appropriate if the committed person has not satisfied his burden of production. *Id.* When deciding

whether the petitioner has satisfied the burden of production, the panel must "view the evidence produced at the first-phase hearing in a light most favorable to the committed person." *Coker*, 831 N.W.2d at 491. It "may not weigh the evidence or make credibility determinations." *Id.* at 490.

As an initial matter, Gamble amended his petition for relief to request full discharge from civil commitment only. Thus, the question before this court is not whether Gamble is eligible for any sort of lesser-restrictive programming but only whether he has established a prima facie case for a second hearing as it pertains to full discharge. We limit our review to those claims presented to the panel. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

With regard to full discharge from civil commitment, Minnesota law provides the following:

> A person who is committed as a sexually dangerous person or a person with a sexual psychopathic personality shall not be discharged unless it appears to the satisfaction of the judicial appeal panel, after a hearing and recommendation by a majority of the special review board, that the committed person is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision.
>
> In determining whether a discharge shall be recommended, the special review board and judicial appeal panel shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the committed person in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.

Minn. Stat. § 253D.31 (2014).  Gamble was committed as an SDP and is required to remain in civil commitment unless he can show that he "is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision." *Id.*  Gamble failed to meet this burden of production for several notable reasons.

First, Gamble testified that he planned to live with his girlfriend upon his release.[1] Dr. Powers-Sawyers testified that she did not recommend this plan because Gamble has only met his girlfriend on three occasions, all within the confines of MSOP.  Dr. Powers-Sawyers stated that this plan

> would place him at situational risk to be in a situation that is not managing this dynamic risk factor of lack of stable bonding yet perpetuating it by living with someone he hardly knows.  He's just jumping right into an intimate relationship. . . .
>
> . . . .
>
> . . . [I]t's dysfunctional.  It's very adolescent-like to just to begin living with someone just because you think you have feelings for them, you haven't even been out on a date first.

Second, two days prior to his hearing before the judicial appeal panel, Gamble was involved in a major altercation with another MSOP client over the use of a computer. The incident resulted in the staff issuing a behavioral expectation report against Gamble. On cross-examination, Gamble was asked to elaborate on the nature of the offense, and he disclosed that he not only engaged in the altercation with the other MSOP client but

---

[1] Gamble's girlfriend is the mother of another MSOP client.

injured the staff member who responded. The incident resulted in Gamble being put on a "cloth stretcher" after he was forcibly secured on the floor with a shield. Gamble testified that he lashed out because "[the other man] kept pushing and kept talking. And I already have a lot of stress. There's been a lot of factors going on with me and I just wasn't thinking at that moment and when he shoved me I started throwing my fists." When asked how he would react in the community should such a situation arise, Gamble stated that he "wouldn't intentionally put [himself] in any situation like that or anything similar." Gamble testified that he does not believe that he is dangerous despite engaging in this altercation two days before the hearing where he was expected to demonstrate (1) his capacity to make an acceptable adjustment to society, (2) that he is no longer dangerous to the public, and (3) that he is no longer in need of inpatient treatment and supervision as required by statute.[2]

Third, Gamble testified that he is currently only in Phase II of a three-phase treatment program. Gamble's primary therapist at Moose Lake testified that before Gamble is eligible for promotion to Phase III, he will be required to pass a particularized polygraph examination that measures sexual arousal and prepare a comprehensive relapse-prevention plan. He has yet to meet these criteria.

The judicial appeal panel is statutorily mandated to consider the factual circumstances of each petitioner's request for relief. Minn. Stat. § 253D.31. The panel found that Gamble "failed to make even a minimal showing that he is no longer a danger

---

[2] Gamble urged this court during oral argument to ignore statutory requirements for discharge from civil commitment. We decline to do so.

to the public." Gamble scored moderate to moderate-high on various risk assessments. The only testimony in support of Gamble's release was his own.[3]  Only two documents were submitted at the hearing—Dr. Powers-Sawyer's report and the petition for full discharge.  And Gamble was not only unable to present a formal discharge plan that had been approved by his treatment team, he also engaged in an altercation with another individual on the eve of his hearing.

The evidence does not support Gamble's claim that he is statutorily entitled to release.  Viewing the evidence in the light most favorable to Gamble, he has failed to produce evidence that, if proven, would entitle him to a full discharge.  *See* Minn. Stat. § 253D.31.  Because Gamble failed to meet his burden of production at the first-phase hearing, the judicial appeal panel did not err by granting the commissioner's motion to deny and dismiss Gamble's petition for full discharge.

**Affirmed.**

---

[3] We recently held, albeit in an unpublished opinion, that "[a]bsent corroborating neutral testimony, [a committed person's] own report and testimony about his treatment cannot stand alone as competent evidence of his capacity to live in open society without the treatment and supervision that the MSOP provides." *Freeman v. Jesson*, No. A14-0120, 2014 WL 2691568, at *3 (Minn. App. June 16, 2014).  We noted that "[i]f self-serving testimony could establish a prima facie case, the first-phase hearing would simply collapse into the petitioner saying certain magic words to trigger the second phase." *Id.*