*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1198**

In the Matter of the Civil Commitment of:
Jeremiah Jerome Johnson.

**Filed December 18, 2023
Affirmed
Bjorkman, Judge**

Commitment Appeal Panel

MacKenzie Guptil, Pine City, Minnesota (for appellant Jeremiah Johnson)

Keith Ellison, Attorney General, Leaf McGregor, Assistant Attorney General, St. Paul, Minnesota (for respondent Commissioner of Human Services)

Benjamin T. Lindstrom, Cass County Attorney, Nicole Cayko, Assistant County Attorney, Walker, Minnesota (for respondent Cass County)

        Considered and decided by Bjorkman, Presiding Judge; Worke, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

        Appellant challenges the decision of a commitment appeal panel (CAP) dismissing his petition seeking provisional or full discharge from his commitment as a sexually dangerous person (SDP). He argues that due-process considerations warrant discharge and the panel erred by weighing the evidence rather than viewing it in the light most favorable to his petition. We affirm.

# FACTS

Appellant Jeremiah Jerome Johnson has a history of forceful sexual assaults, other nonconsensual sexual contact, and exhibitionism. In 2009, he was indeterminately committed to the Minnesota Sex Offender Program (MSOP) as an SDP. In May 2020, Johnson petitioned for a transfer to community preparation services, provisional discharge, or discharge. The special review board recommended denying the petition. Johnson petitioned the CAP for rehearing and reconsideration, and the CAP appointed Dr. Paul Reitman to examine Johnson. Dr. Reitman did not support Johnson's petition, opining that Johnson "is an untreated sex offender with psychopathy that puts him at high risk for criminal recidivism and sexual recidivism." After Dr. Reitman filed his report, the CAP conducted a hearing.

During the hearing, Johnson submitted several exhibits in support of his petition: quarterly treatment progress reports from September 2022, December 2022, and March 2023; a November 2018 annual treatment progress report; a May 2020 mental-health assessment; the special review board's April 2021 treatment report; the standard provisional discharge plan conditions; and Dr. Reitman's report, submitted jointly with respondent Commissioner of Human Services (the commissioner). Johnson also called Dr. Reitman as a witness. The commissioner submitted exhibits opposing transfer.

At the close of Johnson's evidence, the commissioner moved to dismiss the petition under Minn. R. Civ. P. 41.02(b); respondent Cass County joined the motion. The CAP granted the motion, based solely on the evidence Johnson submitted. It denied Johnson's transfer request, explaining that a preponderance of the evidence does not support transfer.

2

And it dismissed his requests for discharge or provisional discharge, explaining that Johnson failed to establish a prima facie case for either type of relief.

Johnson appeals the dismissal of his discharge and provisional-discharge requests.

**DECISION**

A person committed as an SDP may be provisionally discharged if a CAP determines that they are "capable of making an acceptable adjustment to open society," as demonstrated by evidence that (1) they no longer need treatment and supervision in their current treatment setting, and (2) a provisional discharge plan will reasonably protect the public and enable the person to adjust to the community. Minn. Stat. § 253D.30, subd. 1 (2022). A committed person may be fully discharged if a CAP determines that they are (1) "capable of making an acceptable adjustment to open society," (2) "no longer dangerous to the public," and (3) "no longer in need of treatment and supervision." Minn. Stat. § 253D.31 (2022).

When petitioning for discharge or provisional discharge, the committed person "bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief." Minn. Stat. § 253D.28, subd. 2(d) (2022). To do so, the person must produce evidence that, "if proven," would satisfy the criteria for discharge or provisional discharge. *Larson v. Jesson*, 847 N.W.2d 531, 534 (Minn. App. 2014) (quoting *Coker v. Jesson*, 831 N.W.2d 483, 486 (Minn. 2013)). At this stage, the CAP must view the evidence in the light most favorable to the committed person. *Coker*, 831 N.W.2d at 491. Failure to establish a prima facie case may warrant dismissal of the petition under Minn. R. Civ. P.

3

41.02(b). We review dismissal of a petition under rule 41.02 de novo. *Larson*, 847 N.W.2d at 534.

Johnson first argues that he has a due-process right to discharge. He cites caselaw requiring discharge if the original reason for commitment no longer exists, *Call v. Gomez*, 535 N.W.2d 312, 319 (Minn. 1995), and identifying inability to control behavior as a constitutional prerequisite to ongoing civil commitment, *In re Civ. Commitment of Opiacha*, 943 N.W.2d 220, 229 (Minn. App. 2020) (citing *Kansas v. Crane*, 534 U.S. 407, 413 (2002)). The CAP did not expressly address due process in its decision. But we discern no error in this omission because the CAP addressed the statutory criteria, and the current versions of the discharge and provisional-discharge statutes comport with the due-process considerations outlined in *Call*. *See In re Commitment of Fugelseth*, 907 N.W.2d 248, 253 (Minn. App. 2018), *rev. denied* (Minn. Apr. 17, 2018). And even if ability to control behavior alone justifies discharge, regardless of the statutory criteria, Johnson still must establish a prima facie case by producing evidence that, if proven, would establish that he has such control. *Opiacha*, 943 N.W.2d at 229. He has not done so. Indeed, he does not even claim to have such evidence, asserting only that his evidence shows that his current sexual misbehavior is limited to exhibitionism, not assault. But Johnson's continued exhibitionism in a controlled setting after receiving consequences for that conduct, together with the other behavioral problems noted throughout the evidence that Johnson produced, points unavoidably to an inability to control behavior.

Johnson also contends that the CAP erred by weighing the evidence rather than viewing it in the light most favorable to him, citing two examples. First, Johnson argues

4

that the CAP improperly weighed evidence by finding that Dr. Reitman's familiarity with Johnson from the initial commitment case enabled the doctor "to provide an unbiased opinion on [Johnson's] current petition." Johnson is correct that weighing credibility is improper when determining whether a petitioner presented a prima facie case for discharge. *Coker*, 831 N.W.2d at 490-91. But because Johnson submitted Dr. Reitman's report in support of his petition and called Dr. Reitman as a witness, the CAP's acceptance of Dr. Reitman's testimony as unbiased is consistent with the mandate to view the evidence in the light most favorable to Johnson.

Second, he points to the CAP's finding that includes paraphilia among his diagnoses even though "some of his quarterly reports don't reflect an ongoing paraphilia at all." This argument is unavailing. Johnson's 2020 mental-health assessment and the special review board's 2021 treatment report expressly state a diagnosis of paraphilic disorder. The other treatment reports Johnson submitted do not state a paraphilia diagnosis but include among his diagnoses "Encounter for Mental Health Services for Perpetrator of Nonparental Child Sexual Abuse," and they note that Johnson continues to engage in inappropriate sexual behaviors toward female staff and violate their boundaries. And Dr. Reitman testified to a diagnosis of "sexual abuse," explaining that he means Johnson "likes to rape and overpower women" and is "interested in humiliation and degradation," and that this is, "in a sense," a paraphilia diagnosis. The CAP's finding that Johnson has a diagnosis of paraphilia does not reflect weighing of the evidence. It accurately describes this evidence.

Moreover, any error in the CAP's findings as to Dr. Reitman's lack of bias and Johnson's diagnoses does not warrant reversal because our careful review of the record

5

confirms that the evidence Johnson submitted, even when viewed in his favor, does not establish a prima facie case for provisional or full discharge. In particular, a committed person is not entitled to provisional discharge unless "there is no longer a need for treatment and supervision in [their] current treatment setting," Minn. Stat. § 253D.30, subd. 1(b)(1), and not entitled to full discharge unless they no longer need treatment and supervision at all, Minn. Stat. § 253D.31. None of the evidence Johnson presented to the CAP satisfies the discharge criteria. Rather, it shows Johnson is an untreated sex offender who continues to require inpatient treatment in the secure environment of MSOP.

Johnson's evidence uniformly shows that he has antisocial personality disorder and a history of behavior consistent with a sexual disorder. His refusal to engage with treatment precludes diagnostic certainty, but a sexual-disorder diagnosis is not required for continued commitment. *See Opiacha*, 943 N.W.2d at 228 (stating that due process does not require any particular mental condition as a prerequisite to ongoing civil commitment). The evidence also uniformly shows that Johnson persistently exhibits behavioral problems, including exhibitionist and other sexually aggressive behaviors. He denies or minimizes his sexual-offending history, and he remains in the first phase of a three-phase treatment program; this means he has not reached the treatment stage where most sex-offender-specific treatment occurs. And none of the professionals who have examined Johnson support any form of discharge.

In sum, Johnson failed to present a prima facie case for provisional or full discharge because he did not produce evidence that, if proven, would demonstrate that he no longer

6

requires treatment at MSOP.  Accordingly, the CAP did not err by dismissing his petition seeking that relief.

**Affirmed.**

7