*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1371

In the Matter of the Civil Commitment of: Norberto Hugo Salinas.

**Filed February 26, 2024**
**Affirmed**
**Ross, Judge**

Commitment Appeal Panel
File No. AP21-9044

Steven D. Winkler, Brandt & Winkler, PA, St. Peter, Minnesota (for appellant Norberto Salinas)

Keith Ellison, Attorney General, Leaf McGregor, Assistant Attorney General, St. Paul, Minnesota (for respondent Commissioner of Human Services)

Julie Kelley, Watonwan County Attorney, St. James, Minnesota (for respondent Watonwan County)

Considered and decided by Schmidt, Presiding Judge; Segal, Chief Judge; and Ross, Judge.

## NONPRECEDENTIAL OPINION

**ROSS**, Judge

Appellant Norberto Salinas is indeterminately civilly committed as a sexually dangerous person and sexually psychopathic personality. Salinas has consistently admitted to one of his criminal sex offenses as part of his sex-offender treatment, but he has denied committing other offenses, including one to which he pleaded guilty. The special review board recommended the denial of Salinas's petition for provisional or full discharge, and a

commitment appeal panel followed the recommendation. Because Salinas failed to meet his burden to produce competent evidence to show that he satisfied the statutory factors for discharge outlined in Minnesota Statutes sections 253D.30 and 253D.31 (2022), we affirm.

## FACTS

The state indeterminately civilly committed Norberto Salinas to the Minnesota Sex Offender Program (MSOP) as a sexually dangerous person and sexually psychopathic personality in March 2010 after five incidents of alleged sexual misconduct. Three of the allegations resulted in Salinas pleading guilty for his sexual behavior—raping a stranger in 1999, sexually assaulting a 9-year-old relative in 1999, and masturbating in front of a female corrections officer in 2004. Two resulted in his pleading guilty for nonsexual offenses, but Salinas has previously admitted that he engaged in the sexual misconduct that led to one of those charges—sexually assaulting an acquaintance while she slept in 1996. The only charge for criminal sexual conduct that resulted in a guilty plea to a nonsexual charge and about which he has never admitted guilt for the sexual misconduct was his alleged rape of a 20-year-old acquaintance in 1996.

In March 2020, Salinas petitioned the special review board (SRB) for a provisional or full discharge from his civil commitment. An MSOP clinician opined that Salinas's petition was premature. The SRB conducted a hearing in March 2021, and it issued fact findings and its recommendation denying Salinas's discharge petition. Salinas petitioned the commitment appeal panel (CAP) in April 2021 to reconsider the SRB decision. The program transferred Salinas to Community Preparation Services in 2022, and he is now in

phase II of MSOP's three-phase program. The CAP conducted a hearing on Salinas's petition in April and July 2023.

The testimonial and documentary evidence presented during the CAP hearings summarized Salinas's treatment and progress in the program. Salinas's treatment included his need to acknowledge and address his sexual-offense history. Salinas called Tina Olson, who had been Salinas's primary therapist until 2020, and Dr. Andrea Lovett, an independent examiner whom the CAP appointed, to testify before the CAP. Olson testified that she had no sexual-violence risk-assessment training, that she had no experience evaluating MSOP clients for discharge, and that she had not reviewed Salinas's provisional discharge plan. Dr. Lovett opined that Salinas continues to need secured-facility treatment, that it is highly unlikely that Salinas's presenting issues would improve if he were discharged provisionally or fully, and that Salinas's recidivism risk is too high to afford a reasonable degree of safety for the public if he were discharged.

Salinas offered into evidence MSOP's standard provisional discharge plan, but he offered no testimony supporting the supposition that the plan should be applied to him. The commissioner of human services moved to dismiss Salinas's petition under Minnesota Rule of Civil Procedure 41.02(b), arguing Salinas failed to present *prima facie* evidence supporting his requested discharge. The CAP granted the commissioner's motion.

Salinas appeals.

## DECISION

Salinas urges us to reverse the CAP's decision dismissing his discharge petition under Minnesota Rule of Civil Procedure 41.02(b). That rule allows the CAP to dismiss

3

the petition at the close of the committed person's presentation of evidence in a CAP first-phase hearing only if, viewing that evidence in the light most favorable to the committed person, no legal basis exists supporting the requested relief. *Coker v. Jesson*, 831 N.W.2d 483, 491 (Minn. 2013); Minn. R. Civ. P. 41.02(b). We review *de novo* the CAP's dismissal of a discharge petition under the rule. *Larson v. Jesson*, 847 N.W.2d 531, 534 (Minn. App. 2014). Our *de novo* review leads us to affirm the dismissal here.

We must decide whether Salinas met his "burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that [he] is entitled to the requested relief." Minn. Stat. § 253D.28, subd. 2(d) (2022). To support his request for a full discharge, Salinas had to produce evidence that he "is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of treatment and supervision." Minn. Stat. § 253D.31. And to support his request for a provisional discharge, he had to produce evidence showing that he can acceptably adjust to open society based on a consideration of two factors: whether his treatment course and current mental status indicate that he no longer needs treatment and supervision in his treatment setting, and whether his provisional-discharge-plan conditions "will provide a reasonable degree of protection to the public and will enable [him] to adjust successfully to the community." Minn. Stat. § 253D.30, subd. 1. The CAP correctly concluded that Salinas failed to meet his burden for either discharge.

We have carefully considered the evidence Salinas presented, and we hold that it does not constitute *prima facie* support for his requested relief. He presented only the testimony of Olson and Dr. Lovett as described, along with previous treatment reports and

4

a copy of a generic provisional discharge plan created by the department of human services. He identifies nothing in the evidence that shows he is capable of adjusting acceptably to society to warrant a provisional discharge, let alone a showing on the additional two elements (no longer dangerous to the public and no longer needing treatment and supervision) to support a full discharge. *See id.* Salinas failed to meet his burden of production.

Salinas unconvincingly argues that we should reach a different conclusion, relying on contentions that only vaguely bear on the issues. He contends, for example, that the CAP's findings are flawed because they rest largely "on [the CAP's] criticism of MSOP treatment decisions." But this allegation, even if true, does not bear on our conclusion that he presented insufficient evidence to survive the commissioner's motion to dismiss. He contends that the CAP erroneously relied on Dr. Lovett's report and testimony, which is an odd contention given that he is the party who offered Dr. Lovett's report and testimony as evidence bearing on his motion for discharge. And regardless of whether Dr. Lovett's concerns about the quality of Salinas's treatment plan in light of Salinas's failure to acknowledge all his sexual misconduct history are persuasive, ignoring those concerns (and even ignoring her testimony altogether) would not constitute evidence supporting Salinas's discharge motion.

Salinas also contends that "[m]any of the [CAP's] most important findings are not supported in the record." One of those findings, Salinas argues, results from Dr. Lovett's allegedly relying on more previous acts of sexual misconduct than Salinas engaged in and admitted to. We need not parse the record to establish conclusively whether it is Dr. Lovett

who inflates Salinas's sexual-misconduct history or it is Salinas who minimizes it (but it appears that it is the latter), because the exercise is irrelevant to our *de novo* review of whether Salinas presented sufficient evidence to overcome the motion to dismiss.

Salinas identifies parts of the record that he believes undercut Dr. Lovett's testimony and the CAP's reliance on it. He contends that the record shows that he was "active in his treatment and programming" while he was confined at Moose Lake. He observes that he was given "great" matrix scores. He says that he was transparent about his sexuality, was behaviorally compliant, participated in vocational training, received good reviews for his work, and was chosen to mediate roommate and personality issues involving other clients. He also highlights his excellent attendance for all his treatment programming, his having a good relationship with his peers, and his being awarded increased liberties and movement on campus. But this evidence of laudable participation and some success in the program falls short of constituting evidence showing the statutory elements necessary to justify being provisionally or fully discharged from the program.

Salinas argues that this court should infer from his past, positive reports of progress in treatment that he would continue that behavior while discharged from commitment. But that inference constitutes a substantive factual leap that goes beyond merely viewing the evidence in the light most favorable to him. No professional testimony suggested that inference, and we are in no position to draw it on appeal. The hearing evidence failed to show that Salinas is entitled to a provisional or full discharge.

**Affirmed.**