**Hollis John LARSON, Appellant,**

v.

**Lucinda JESSON, Commissioner of Human Services, Respondent.**

**No. A14–0095.**

Court of Appeals of Minnesota.

June 9, 2014.

David A. Jaehne, West St. Paul, MN, for appellant.

Lori Swanson, Attorney General, Barry R. Greller, Assistant Attorney General, St. Paul, MN; and Stephen N. Betcher, Goodhue County Attorney, Red Wing, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; HUDSON, Judge; and SMITH, Judge.

## OPINION

SMITH, Judge.

We affirm the judicial appeal panel's dismissal of appellant Hollis John Larson's petition for a discharge or a provisional discharge from his commitment as a sexually dangerous person because Larson failed to introduce any competent evidence that he meets the statutory criteria for relief.

## FACTS

After serving approximately 16 years in prison for convictions of sexual assault, Larson was indeterminately committed as a sexually dangerous person on July 28, 2008. Larson appealed his commitment, and this court affirmed. *In re Civil Commitment of Larson,* Nos. A08–1188, A08–1468, 2009 WL 1049171, at *1 (Minn.App. Apr. 21, 2009), *review denied* (Minn. June 30, 2009).

On July 9, 2010, Larson petitioned the special review board for a discharge or a provisional discharge from civil commit-

ment. In June 2011, the special review board conducted a hearing—which Larson chose not to attend—and recommended denying Larson's petition. Larson requested review and reconsideration before the judicial appeal panel.

In April 2013, at Larson's request, the judicial appeal panel appointed Penny Zwecker, Ph.D., to examine Larson and make recommendations about his petition. However, when Dr. Zwecker met Larson for the scheduled interview, Larson declined to participate, "walk[ing] out of the interview before the interview had even started."

In September 2013, the judicial appeal panel conducted a first-phase hearing; Larson refused to attend. The panel heard testimony from Dr. Zwecker and, by stipulation of the parties, received her written report.[1] Dr. Zwecker recommended that Larson continue at MSOP. She observed that Larson has never completed a sex-offender treatment program, has consistently been a "non-participant" in MSOP, refusing even to sign the applicable consent form, and "has not availed himself of the opportunity to learn more about himself in relation to his sex offense history, his risk for reoffending, and appropriate tools to utilize to not reoffend." Dr. Zwecker also noted Larson's lack of a provisional discharge plan, and opined that Larson's numerous behavioral incidents in MSOP, including recent "assaultive behavior towards another peer," raise a concern for public safety.

At the conclusion of the first-phase hearing, the commissioner moved for dismissal of Larson's petition under Minn. R. Civ. P. 41.02(b) and Minn.Stat. § 253D.28, subd. 2(d) (Supp.2013).[2] The judicial appeal pan-

---

1. The judicial appeal panel also received 17 other exhibits by stipulation of the parties but, in light of recent caselaw and "in the abun-

dance of caution, the only exhibit the panel considered was Dr. Zwecker's report."

2. In 2013, the legislature recodified the statutes governing civil commitment of sexually

el granted the motion and denied Larson's petition for a discharge or a provisional discharge.

## ISSUES

I. What is our standard of review?

II. Did Larson meet his initial burden of production for a discharge or a provisional discharge for a person civilly committed as a sexually dangerous person?

## ANALYSIS

### I.

██ Larson challenges the judicial appeal panel's dismissal of his request for a discharge or a provisional discharge from MSOP. As a threshold matter, we must determine the appropriate standard for our review. Generally, this court reviews decisions by a judicial appeal panel for clear error, "examin[ing] the record to determine whether the evidence as a whole sustains the appeal panels' findings" and not "weigh[ing] the evidence as if trying the matter de novo." *Jarvis v. Levine*, 364 N.W.2d 473, 474 (Minn.App.1985) (quotation omitted); *see also Piotter v. Steffen*, 490 N.W.2d 915, 919 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992). But we hold that when a judicial appeal panel dismisses a petition under Minn. R. Civ. P. 41.02(b), the appropriate standard of appellate review is de novo. *See Coker v. Jesson*, 831 N.W.2d 483, 489 (Minn.2013) (noting that "the standards for directing a verdict [under Minn. R. Civ. P. 50.01] apply to motions to dismiss under [Minn. R. Civ. P.] 41.02(b)," and these standards "require the determination of whether, as a matter of law, the evidence is sufficient to present a fact question for the jury's con-

sideration" (quotation omitted)); *see also Coker v. Ludeman*, 775 N.W.2d 660, 663 (Minn.App.2009) (noting that determining whether judicial appeal panel applied the proper evidentiary burden was a legal issue that this court reviews de novo), *review dismissed* (Minn. Feb. 24, 2010).

### II.

██ Having determined our standard of review, we turn to the substance of Larson's appeal. A person who is committed as a sexually dangerous person may petition the special review board for a discharge or a provisional discharge from commitment. Minn.Stat. § 253D.27, subds. 1, 2 (Supp.2013). If the special review board recommends that the commissioner deny the committed person's discharge petition, then the committed person may request reconsideration by the judicial appeal panel. *Coker*, 831 N.W.2d at 485. The committed person may be discharged only if a judicial appeal panel determines that "the committed person is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision." Minn.Stat. § 253D.31 (Supp.2013). In determining whether to order a discharge, the judicial appeal panel must consider "whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the committed person in adjusting to the community." *Id.* "If the desired conditions do not exist, the discharge shall not be granted." *Id.*

Similarly, the committed person may be provisionally discharged only if the judicial appeal panel determines that "the committed person is capable of making an accept-

---

dangerous persons. *See* 2013 Minn. Laws, ch. 49 (codified at Minn. Stat. ch. 253D). Here, we cite the current versions of the statutes because, for purposes of this case, the

legislature merely clarified pre-existing law without making any substantive changes. *See Braylock v. Jesson*, 819 N.W.2d 585, 588–89 (Minn.2012).

able adjustment to open society." Minn. Stat. § 253D.30, subd. 1(a) (Supp.2013). The judicial appeal panel must consider two factors in determining whether to order a provisional discharge:

> (1) whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the committed person's current treatment setting; and
>
> (2) whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community.

*Id.,* subd. 1(b) (Supp.2013).

▉▉▉ In a proceeding before the judicial appeal panel, the petitioner " 'bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief.' " *Coker,* 831 N.W.2d at 485–86 (quoting Minn.Stat. § 253B.19, subd. 2(d) (2012)). This burden is merely a burden of production. *Id.* at 486. To satisfy the burden of production, the petitioner must "come forward with sufficient, competent evidence that, if proven, would entitle the petitioner to relief." *Id.* (quotation omitted). If the petitioner satisfies the burden of production at this "first-phase hearing," the proceeding advances to a "second-phase hearing" and the burden shifts to the commissioner, who bears a burden of persuasion on the merits of a discharge petition. *See id.* In that event, the commissioner must prove " 'by clear and convincing evidence that the discharge or provisional discharge should be denied.' " *Id.* (quoting Minn.Stat. § 253B.19, subd. 2(d) (2012)).

▉▉▉ After the plaintiff has completed the presentation of evidence, the commissioner may move to dismiss the petition under Minn. R. Civ. P. 41.02(b). *See id.* at 488. The relevant portion of the rule provides:

> After the plaintiff has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law, the plaintiff has shown no right to relief....

Minn. R. Civ. P. 41.02(b); *see also Coker,* 831 N.W.2d at 490–91 (holding that subsequent sentences of Minn. R. Civ. P. 41.02(b) do not apply because they conflict with the commitment statute). When considering a motion to dismiss under Minn. R. Civ. P. 41.02(b) after the first-phase hearing, the judicial appeal panel "may not weigh the evidence or make credibility determinations." *Coker,* 831 N.W.2d at 490–91. "Instead, the [judicial appeal panel] is required to view the evidence produced at the first-phase hearing in a light most favorable to the committed person." *Id.* at 491. However, dismissal under Minn. R. Civ. P. 41.02(b) may still be appropriate when the committed person does not meet his burden of production. *See id.* at 492.

▉▉▉ Larson concedes that the only evidence he produced in support of his petition is that he has not had any sex-related offenses since 1990. Larson contends, however, that this evidence is sufficient to avoid dismissal and shift the burden of persuasion to the commissioner. We disagree.

Because the criteria for a provisional discharge are more lenient than the criteria for a discharge, we first determine whether Larson's evidence is sufficient to satisfy his burden of production for a provisional discharge. *Compare* Minn.Stat. § 253D.30, subd. 1(a), *with* Minn.Stat.

§ 253D.31. As stated above, a person committed as a sexually dangerous person may obtain a provisional discharge only if he "is capable of making an acceptable adjustment to open society." Minn.Stat. § 253D.30, subd. 1(a). That question must be answered based on two considerations: (1) "whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the committed person's current treatment setting," and (2) "whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community." *Id.*, subd. 1(b).

Here, it is undisputed that Larson has consistently refused to participate in sex-offender treatment and that he lacks a provisional discharge plan. It is also undisputed that Larson has been confined since 1992 and that, throughout his confinement, Larson has had numerous behavioral infractions, resulting in significant time spent in segregation. Regarding the first consideration before the judicial appeal panel, Dr. Zwecker's testimony evidences the degree to which Larson has been non-compliant in the treatment objectives of MSOP. The fact that Larson has never completed a sex-offender program and has consistently been a "non-participant" in MSOP demonstrates his lack of progress. Larson's refusal to sign the applicable consent forms, and his failure to avail "himself of the opportunity to learn more about himself in relation to his sex offense history, his risk for reoffending, and appropriate tools to utilize to not offend," demonstrate that he cannot satisfy the first consideration. Regarding the second consideration, a provisional discharge plan is a necessary step before the judicial appeal panel could even begin to consider a provisional discharge. Larson's lack of a provisional discharge plan, together with his behavioral incidents in MSOP, including assaultive behavior, raise a concern for public safety.

Viewing the evidence in the light most favorable to Larson—in other words, assuming that he has had no sex-related offenses since his confinement—Larson has failed to produce evidence that, if proven, would entitle him to a provisional discharge. *See* Minn.Stat. § 253D.30, subd. 1(a). Consequently, Larson has also failed to produce evidence that, if proven, would entitle him to a discharge. *See* Minn.Stat. § 253D.31. To the contrary, Larson's lack of motivation, continued denial of his need for treatment, and poor planning demonstrate that he has not met his burden to show that he is entitled to relief.

## DECISION

Because appellant failed to present any competent evidence that he is entitled to relief, the judicial appeal panel's dismissal of appellant's request for a discharge or provisional discharge from MSOP must be upheld.

**Affirmed.**