*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1199**

Stephen G. Spartz, petitioner,
Appellant,

vs.

Lucinda E. Jesson,
Commissioner of Human Services,
Respondent.

**Filed December 29, 2014
Affirmed
Ross, Judge**

Carver County District Court
File No. 10-PX-00-000182

Jed J. Hammell, Hammell & Murphy, P.L.L.P., Caledonia, Minnesota (for appellant)

Lori Swanson, Attorney General, Adam Welle, Assistant Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Dawn M. O'Rourke, Assistant County Attorney, Chaska, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Smith, Judge.

**UNPUBLISHED OPINION**

**ROSS**, Judge

Stephen Spartz has been receiving treatment at Minnesota Security Hospital as a civilly committed, mentally ill and dangerous person since 2002. He petitioned for transfer or provisional discharge and a judicial appeal panel dismissed his petition after a first-phase hearing in early 2014. Spartz appeals the denial of his provisional-discharge request. Because we discern no error in the appeal panel's decision that Spartz failed to present a *prima facie* case supporting discharge, we affirm.

## FACTS

The events leading to Spartz's commitment frame his current circumstances and bear on the commissioner's assessment of his risk of future violence. We outline them briefly.

Spartz was investigated in 1994 after he interfered with deputies attempting to repossess a Bobcat excavating machine that Spartz used in his landscaping business. Two years later he pleaded guilty to a charge of domestic assault after he dragged his girlfriend across his driveway. He adopted "Neo-Tech" ideas as his religion. In 1997 Spartz took an asphalt grinder from a truck to retaliate for road work that upset him, and the state charged him with theft. Spartz attempted to plead guilty but insisted that the prosecutor was coercing him by withholding evidence. When the presiding judge refused to accept Spartz's allegedly "coerced" *Alford* plea, Spartz repeatedly challenged the district court's legitimacy and indicated that he would walk out. The district court held Spartz in contempt after he made a slashing motion with his hand across his throat,

2

pointed to the judge, and said, "That's you." He also made threatening phone calls to the prosecutor. The district court sentenced him to probation for the theft. Spartz pleaded guilty to harassment and stalking due to his courtroom conduct. The district court again issued a probationary sentence.

Soon after the theft trial was scheduled to occur, Spartz killed his dog with a bow and arrow. Although he claimed he was trying to put the dog out of its misery following its being struck by a car, the arrow was not immediately fatal. Police arrested him and took him to the hospital. There he threatened medical staff, tried to gouge out his eyes with his fingers, and attempted suicide by ramming his head into a doorknob. Spartz was prescribed but would not take mental-health medication. He began making statements revealing a troubled mind: police were spying on him and plotted against him; he ruled the world through his computer; he had a sixth sense; and he communicated with extraterrestrials by flashing car headlights. He assaulted his father and grandmother. And he occasionally fell into a catatonic state. Police found Spartz in his home in 1999 plugging his ears while slowly turning circles. He had soiled himself, and urine was puddled on the floor.

Spartz's mother found him in 2000 standing nude in front of his bathroom sink. Water overflowed the sink and ran onto the floor, and Spartz stared at the remains of his pet bird, which he had killed. The next day a roommate found Spartz again naked and catatonic. Spartz later explained that he was imagining that he was standing face-to-face with Judge Perkins (who was the subject of Spartz's throat-slashing gesture) and that the first one to move his feet would "lose." At the time, responding to a question about what

he was doing, Spartz grabbed a filleting knife from the kitchen and attacked a business acquaintance. Spartz explained later that he had wanted to see blood and that the person's attempt to run away from him informed him that the person was an intruder. Spartz tore several holes in the back of the man's leather jacket, but others subdued him to prevent death or serious injury. Spartz physically resisted hospital treatment, threatened staff, and attempted to bite them. The state charged Spartz for the attack, but the district court found Spartz not guilty by reason of mental illness, and it ordered Spartz civilly committed.

Spartz was provisionally discharged in 2001, but the district court revoked the discharge two months later when Spartz made new threats to kill Judge Perkins. Spartz's threats included statements that he had already killed the judge and that he would enforce the death penalty against him. Spartz was provisionally discharged again the next month, but the discharge lasted only several weeks until he again made threats to kill Judge Perkins. Spartz also inquired into the judge's whereabouts. And he even informed his probation officer that he had intentionally violated the conditions of his probation hoping that a probation-revocation hearing would place him before the judge.

During his commitment, in early 2002 Spartz punched at a physician during an emergency room visit. It took five police officers to restrain him. Spartz was soon indefinitely committed to the Minnesota Security Hospital as mentally ill and dangerous. In 2003 hospital staff placed Spartz in a high control unit because of his agitated and aggressive behavior. Later that year the district court authorized involuntary administration of medication, and it renewed this order in 2006.

Two 2012 reports prepared by psychologists Angela Dugan and Martin Lloyd offer mixed assessments of Spartz's more recent condition. Spartz is diagnosed with schizoaffective disorder, bipolar type. He "experiences significant symptoms of depression . . . or mania . . . concurrent with psychotic symptoms." But he exhibited less of these traits than the "prototypical psychopath." He also is diagnosed with a personality disorder with obsessive-compulsive and paranoid traits. He "displays a rigid interpersonal style characterized by stubbornness; hyper-consciousness and inflexibility in matters of morality, ethics, and values; a tendency to regard others with suspicion; and a tendency to perceive others as being either for or against him." Spartz refused to have a psychological examination before his 2014 judicial appeal panel hearing, so his latest comprehensive assessments were these 2012 reports.

During interviews with Drs. Dugan and Lloyd, Spartz showed no active symptoms of mental illness and he did not behave impulsively. He appeared well-groomed and acted pleasant and cooperative. He appeared to think logically and did not display or report delusional thinking. The doctors observed that Spartz's behavior has been good for several years. Since 2010, he has had the highest level security clearance the hospital allows and has earned substantial on-premises unsupervised activity. He attends and actively participates in therapy. Despite these positive indicators, both doctors stated that Spartz had regressed in the months immediately before the 2012 hearing, showing increased rigidity of thought. And they believe that Spartz underestimates his need for continued treatment. Spartz told doctors that he plans to move to a less secure facility and develop a lucrative landscaping business with at least five employees within four years.

One doctor expressed concern that Spartz's business plan would result in significant symptom-causing stress for him. That doctor recommended against transfer or discharge, and the other evaluated Spartz's condition without making any recommendation.

This appeal arises from Spartz's September 2012 petition requesting transfer and provisional discharge. A Special Review Board recommended in February 2013 that the Deputy Commissioner for the Department of Human Services deny Spartz's petition. The commissioner followed the recommendation. Spartz filed a petition for rehearing and reconsideration, and a judicial appeal panel held a first-phase hearing in March 2014. Spartz was the only witness to testify, but he had unsuccessfully attempted to subpoena Judge Perkins to compel his attendance.

Spartz told the panel that he has never been delusional and that he needs no treatment for delusions. He continues to believe that Judge Perkins wronged him, and he claims that his mental problem is "posttraumatic stress disorder from what happened in the courtroom with Judge Perkins." He had previously diagnosed himself as having "anti-civilization identity illness." He claimed that he never intended to use force against Judge Perkins; he instead intended to drive the judge to suicide through ostracism. He maintained that his previous apparently life-threatening behavior against the judge was merely a misinterpretation of his Neo-Tech vernacular. He admitted to only some prior violent conduct. For example, he explained one attack on another patient, claiming, "I was laying on the bed and I sat up out of bed and I had my hands clenched on the side of my body and I sat up and my fist rubbed against part of his body."

Spartz asked that his own provisional discharge plan be implemented. It would entail placing him in a less-secure facility, such as a halfway house. But he did not make any arrangements to be admitted to a halfway house or anywhere else or present any evidence that he could be. He alternatively asked to be released to his own home. He maintained that his family members would help support him and that they purchased a hobby farm for him. He argued that he would keep his stress level low by staying occupied, working as a self-employed landscaper, and attending state-run activities. He said he would agree to receive psychiatric care at a frequency determined by the state. And he suggested that his compliance with a medication plan could be monitored by periodic blood draws. The state helped Spartz create his provisional discharge plan, but it did not support the plan.

The judicial appeal panel considered the evidence, the arguments, and Spartz's proposal during a first-phase hearing. It then dismissed Spartz's petition. Spartz appeals the denial of his petition for a provisional discharge.

## D E C I S I O N

We are not persuaded by Spartz's argument that the judicial appeal panel erred by dismissing his petition for provisional discharge. We review the panel's decision de novo. *See Larson v. Jesson*, 847 N.W.2d 531, 534 (Minn. App. 2014).

Spartz has the burden to present an evidentially supported *prima facie* case showing that he is entitled to a provisional discharge. *See* Minn. Stat. § 253B.19, subd. 2(c) (2012). He is eligible for a provisional discharge only if he is "capable of making an acceptable adjustment to open society." Minn. Stat. § 253B.18, subd. 7 (2012). If Spartz

successfully presented evidence that, if proven, would show a right to relief, the burden shifts to the state to prove by clear and convincing evidence, in a "second-phase hearing," that the panel should deny the requested discharge. *See* Minn. Stat. § 253B.19, subd. 2(c); *Coker v. Jesson*, 831 N.W.2d 483, 486, 490 (Minn. 2013). To make his initial showing, Spartz must show that his "course of hospitalization and present mental status indicate there is no longer a need for treatment and supervision in [his] current treatment setting." Minn. Stat. § 253B.18, subd. 7. And he must also show that "the conditions of [his] provisional discharge plan will provide a reasonable degree of protection to the public and will enable [him] to adjust successfully to the community." *Id*.

Spartz maintains that if we apply the statute in light of its constitutional due process requirements, he has met the statutory requirements for provisional discharge. He relies chiefly on *O'Connor v. Donaldson*, 422 U.S. 563, 95 S. Ct. 2486 (1975). That case does not support his release. *Donaldson* prohibits as unconstitutional only the continued commitment of a nondangerous person who is not receiving any treatment for mental illness. *Id.* at 573–75, 95 S. Ct. at 2492–94. Spartz admits that he is mentally ill and receives treatment for his mental illness. Although he claims that he has never been delusional and that he is not suicidal or homicidal, the record indicates otherwise.

We do not reweigh evidence, and we must make every inference and credibility determination in Spartz's favor. *Coker*, 831 N.W.2d at 490–91. But we need not consider conclusory, foundationless statements. *See* Minn. R. Evid. 602, 701. And we consider undisputed facts even if they reflect poorly on the patient. *See Larson*, 847 N.W.2d at 536. Spartz's conclusory assertion that he has never been delusional is belied by the

8

evidence. His imaginary encounters with Judge Perkins and his unprovoked attack on his business acquaintance with the fillet knife, among other incidents in the record (such as his fear that police plotted against him, his belief that he ruled the world by computer, and his communication with aliens), defeat the assertion.

Spartz's assertion that he is not homicidal is also belied by the evidence. His own testimony highlights his continued preoccupation with Judge Perkins. He listed the transcript from his 1997 trial among his exhibits in this case, and he tried to force the judge to attend his judicial appeal panel hearing. His current philosophy ostensibly justifies both the judge's death and his participation as its instrument. Although he testified that his Neo-Tech beliefs would not permit him to kill the judge directly (a claim that is not consistent with his previous threatening behavior), he believes it would be acceptable for him to torment the judge to the point of suicide. Given Spartz's undisputed history of violence, his continued obsession with Judge Perkins, and his homicidal ideals, Spartz's supposed nondelusional, nonhomicidal self-assessment is not logical.

We recognize that Spartz has presented evidence of progress. His current medication has reduced the symptoms of his mental illness, and he claims to accept that taking his medication is essential to his treatment. He also has exhibited good behavior recently, justifying reduced supervision. But evidence of Spartz's alleged low risk of harm is slim. He testified that he would continue to take his medication if discharged and that the state could somehow monitor his effort. But he denies being delusional now or ever; that Spartz does not fully appreciate his psychological condition significantly decreases the likelihood that he would, without direct supervision, continue to adhere to

9

his medication regimen. And although Spartz's last comprehensive psychological reports are in significant ways favorable, they also reveal that he had begun to regress in the immediately previous months. The favorable reports are not compelling for the additional reason that they are dated. They preceded the hearing by two years; Spartz refused to be evaluated by the judicial appeal panel's independent psychologist before the hearing.

Taken in its best light, the evidence does not establish that Spartz has completed treatment or understands his condition well enough to manage it unsupervised. No reasonable fact-finder could find that discharge to his home would provide the daily treatment and supervision needed to protect Spartz and others, and Spartz did not provide an adequate provisional discharge plan or make the necessary inquiries and arrangements that would ensure that his own plan is even workable. We must therefore affirm the judicial appeal panel's dismissal of his petition for provisional discharge.

Spartz makes several arguments challenging the constitutionality of the civil commitment statute. He cannot challenge a statute's constitutionality for the first time on appeal. *State v. Engholm*, 290 N.W.2d 780, 784 (Minn. 1980). Although the judicial appeal panel was a forum with subject matter jurisdiction over these issues, Spartz did not raise the arguments there. We do not consider them.

**Affirmed.**