*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1151**

In the Matter of the Civil Commitment of:
Kerry Mitchell Lenz.

**Filed January 8, 2024
Affirmed
Hooten, Judge***

Commitment Appeal Panel

Keith Ellison, Attorney General, Anthony R. Noss, Assistant Attorney General, St. Paul, Minnesota; and

Karl Schmidt, Benton County Attorney, William V. Faerber, Assistant County Attorney, Foley, Minnesota (for appellant Minnesota Department of Human Services/Benton County)

Jennifer L. Thon, Jonathon M. Comuzzi, Jones Law Office, Mankato, Minnesota (for respondent Kerry Mitchell Lenz)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Hooten, Judge.

**NONPRECEDENTIAL OPINION**

**HOOTEN**, Judge

Appellant Commissioner of the Minnesota Department of Human Services challenges a Commitment Appeal Panel (CAP) order granting respondent Kerry Mitchell Lenz's petition for provisional discharge from the Minnesota Sex Offender Program

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

(MSOP), arguing CAP clearly erred in finding the commissioner failed to prove by clear and convincing evidence that provisional discharge should be denied. We affirm.

**FACTS**

In May 2015, Lenz was civilly committed to MSOP as a sexually dangerous person (SDP) and sexual psychopathic personality (SPP).[1] In June 2015, Lenz petitioned for transfer to the MSOP Community Preparation Services (CPS).[2] In January 2018, CAP granted Lenz's transfer to CPS but did not transfer Lenz until September 2020, after Lenz moved the district court to hold MSOP authorities in contempt of court for failure to transfer.

In December 2020, Lenz petitioned the Special Review Board (SRB) for provisional discharge or discharge from his civil commitment, submitting the standard provisional discharge plan. The SRB held a hearing on the petition in January 2022 and, in February 2022, the SRB majority recommended granting provisional discharge and denying full discharge.

The commissioner petitioned CAP for rehearing and reconsideration of the SRB's recommendation to grant provisional discharge. CAP held a hearing on the petition in May 2023 at which it heard testimony from Lenz, Scott Halvorson, a MSOP reintegration director, and Dr. Donald Alberg, a court-appointed examiner, and determined that Lenz

---

[1] Lenz appealed commitment and, later, petitioned this court for a writ of mandamus. In separate orders, this court dismissed Lenz's appeal as untimely and denied mandamus. *In re Civ. Commitment of Lenz*, No. A15-1340 (Minn. App. Sept. 15, 2015) (order); *In re Civ. Commitment of Lenz*, No. A15-1447 (Minn. App. Oct. 6, 2015) (order).
[2] CPS is a 24/7 non-secure treatment environment that provides programming focused on deinstitutionalization.

presented sufficient evidence to allege a prima facie case that he was entitled to provisional discharge.[3] CAP then heard testimony from Christopher Schiffer, MSOP clinical court services director, and Dr. Cassandra Lind, department of human services forensic evaluation department manager.

The parties stipulated that Dr. Alberg, Mr. Schiffer, and Dr. Lind were qualified to testify as expert witnesses. Dr. Alberg supported Lenz's provisional-discharge request, while Mr. Schiffer and Dr. Lind opposed it. Dr. Alberg based his testimony on his interview with Lenz and review of various records provided by MSOP. Dr. Alberg testified that he remained in support of Lenz's provisional-discharge request despite the conflicting expert testimony.

In July 2023, a CAP majority granted Lenz's provisional discharge, finding the commissioner failed to prove by clear and convincing evidence that provisional discharge should be denied.

The commissioner appeals.

**DECISION**

We review CAP decisions "for clear error, examining the record to determine whether the evidence as a whole sustains the CAP's findings." *In re Civ. Commitment of Edwards*, 933 N.W.2d 796, 803 (Minn. App. 2019), *rev. denied* (Minn. Oct. 15, 2019). In applying clear-error review, we "view the evidence in a light favorable to the findings" and "will not conclude that a fact[-]finder clearly erred unless, on the entire evidence, we are

---

[3] In this appeal, the commissioner does not dispute that Lenz presented a prima facie case that he is entitled to provisional discharge.

left with a definite and firm conviction that a mistake has been committed." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotations and citations omitted). "[T]he role of an appellate court is not to weigh, reweigh, or inherently reweigh the evidence when applying a clear-error review; that task is best suited to, and therefore is reserved for, the fact[-]finder." *Id.* at 223. Instead, our role is to review "the record to confirm that evidence exists to support the decision." *Id.* at 222. We must:

> fully and fairly consider the evidence, but so far only as is necessary to determine beyond question that it reasonably tends to support the findings of the fact[-]finder. When the record reasonably supports the findings at issue on appeal, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary.

*Id.* at 223 (quotations and citations omitted). Generally, we defer to CAP's evaluation of expert testimony. *Edwards*, 933 N.W.2d at 807 (citing *In re Civ. Commitment of Fugelseth*, 907 N.W.2d 248, 256 (Minn. App. 2018), *rev. denied* (Minn. Apr. 17, 2018)). We will affirm a CAP decision so long as it is supported by the record as a whole, even if the evidence is conflicting. *See Kenney*, 963 N.W.2d at 226-27 (concluding that, despite conflicting evidence, CAP did not clearly err because its findings were supported by the record as a whole).

A person civilly committed as an SDP or SPP or both may seek a reduction in custody by petitioning the SRB for transfer, provisional discharge, or discharge from civil commitment. Minn. Stat. § 253D.27, subds. 1-2 (2022). The SRB must conduct a hearing on the petition and issue a recommendation to CAP. *Id.*, subds. 3-4 (2022). The

4

commissioner may petition CAP for rehearing and reconsideration of the SRB's recommendation. Minn. Stat. § 253D.28, subd. 1(a) (2022).

A person civilly committed as an SDP or SPP or both "shall not be provisionally discharged unless the committed person is capable of making an acceptable adjustment to open society." Minn. Stat. § 253D.30, subd. 1(a) (2022). In determining whether a person is capable of making such an adjustment, CAP must consider two factors:

> (1) whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the committed person's current treatment setting; and
>
> (2) whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community.

*Id.*, subd. 1(b) (2022); *see also Larson v. Jesson*, 847 N.W.2d 531, 535 (Minn. App. 2014).

Once a petitioning party presents a prima facie case that he is entitled to provisional discharge, the party opposing provisional discharge "bears the burden of proof by clear and convincing evidence that . . . provisional discharge should be denied." Minn. Stat. § 253D.28, subd. 2(d) (2022); *see Larson*, 847 N.W.2d at 535 (noting that once the person petitioning for provisional discharge satisfies the burden of production, the commissioner bears the "burden of persuasion on the merits of a discharge petition"). Clear and convincing evidence is "more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Limberg v. Mitchell*, 834 N.W.2d 211, 218 (Minn. App. 2013) (quoting *Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn. 1978)). The standard has been met "when the truth of the facts asserted is highly probable." *Id.* (quotation omitted).

5

CAP evaluated the expert testimony and found Dr. Alberg—the expert who supported Lenz's provisional-discharge request—"more credible and persuasive" than Mr. Schiffer and Dr. Lind—the experts who opposed Lenz's request. We defer to CAP's credibility determination and conclude that CAP did not clearly err because the evidence as a whole supports that Lenz is capable of making an acceptable adjustment to the community, according to the two statutory factors. *Edwards*, 933 N.W.2d at 807; *Kenney*, 963 N.W.2d at 226-27.

**Factor 1**

First, evidence in the record supports CAP's finding that Lenz's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in his current treatment setting.

Dr. Alberg opined that Lenz's treatment needs, including his reintegration needs, could be adequately met on provisional discharge. In recognizing that reintegration was a notable treatment need, Dr. Alberg opined that Lenz's reintegration needs were not being met and were not likely to be met in his current treatment setting due, in part, to MSOP's failure to offer Lenz formal reintegration outings.

While incarcerated, Lenz completed two sex offender treatment programs. Lenz also completed the InnerChange Freedom Initiative (IFI) program and mentored others in

the program.[4]  Lenz has participated in the MSOP treatment program since 2015 when he was civilly committed and remains in the second phase of treatment.[5]

Since his transfer to CPS in 2020, Lenz has been living in a non-secure setting that provides programming focused on deinstitutionalization and has gone on dozens of medical outings in the community.  In 2022, Lenz received unaccompanied on-campus privileges that allow him to walk without a staff escort and escort other clients within designated areas of the MSOP campus.

Lenz's MSOP treatment providers have consistently given him "enhanced" or "satisfactory" matrix scores.[6]  Lenz has been described having a "fairly good understanding of his offense cycle, including his buildup of anger and frustration and his distorted thoughts of sexual entitlement."  He has also been described as being "transparent in discussing" his "excitement to violence" and on a "strong [treatment] trajectory" as evidenced by his "commit[ment] to a healthy lifestyle, . . . cooperat[ion] with his treatment team, . . . and tak[ing] on leadership positions."

---

[4] IFI is a faith-based program focused on preparing inmates for reintegration in the community.

[5] The MSOP treatment program is a three-phase program.  Lenz was placed in the second phase almost immediately after his civil commitment due to his previous treatment status while incarcerated.  The second phase "focuses primarily on securing an agreed upon history of the client's offending behavior and the factors that contributed to it. Clients are expected to identify and develop resolution of the issues underlying their offense behaviors."  The third phase focuses on generalizing those changes so that clients can transition from the institutional setting to living in community.

[6] MSOP matrix factors reflect dynamic risk factors—"psychological vulnerabilities that, in conjunction with situational triggers, can culminate in sexually abusive actions."  The factors represent specific treatment targets.

Further, Lenz has been described as having done "significant treatment work on his sexual offense patterns and dynamics of sexual offending," as "accountable for his offense history," and as "a positive influence in his therapeutic community, serving as one of three members appointed to the Community Council and serving as a CREST guide."[7] MSOP clinical leadership recommended that Lenz was "at a point in treatment where he [could] focus on generalizing the changes he has made back to community settings."

**Factor 2**

Second, evidence in the record supports CAP's finding that the conditions of the standard provisional discharge plan will provide a reasonable degree of protection to the public and will enable Lenz to adjust successfully to the community.

Dr. Alberg opined that the standard provisional discharge plan would provide a reasonable degree of protection to the public and enable Lenz to successfully adjust to the community. Dr. Alberg considered Lenz's receipt of three CARs and consequent job loss and opined that Lenz's behavior was not dangerous or so overwhelming as to outweigh or nullify his positive treatment progress. Consequently, he believed Lenz could be provisionally discharged "without undue risk to the community."

On provisional discharge, Lenz will be required to work on his remaining treatment needs, as directed by MSOP. Lenz's living situation and community outings will also be

---

[7] The Community Council is a group of individuals who are considered senior or more advanced in treatment. This group helps guide the therapeutic community by facilitating meetings, working with staff, and weighing in on client accountability reports (CARs). CARs are CPS's rule infraction system. CREST stands for conflict resolution educational session training. A CREST guide is a volunteer who is trained in third-party mediation to help clients resolve conflict.

limited and monitored by MSOP. For instance, the standard provisional discharge plan sets forth five tiers of intensive supervision that clients gradually move through based on MSOP's review of their treatment progress. During tier 1, Lenz will remain in 24/7 staffed housing and will not be allowed to go out in the community unsupervised. During tier 2, Lenz will be allowed to request independent time in the community. However, Lenz will be actively and passively GPS monitored, and his movements will be pre-approved and appropriately verified by MSOP. He will also have the opportunity to process his experiences on outings with his outpatient providers and other community supports. The standard plan also sets forth processes for addressing violations of the plan conditions to ensure public safety.

Viewing the evidence in the light most favorable to the findings, deferring to CAP's credibility determination, and without reweighing the evidence or reconciling conflicting evidence, we conclude that the evidence as a whole supports CAP's finding that Lenz is capable of making an acceptable adjustment to the community, according to the two statutory factors. Therefore, it is immaterial that the evidence could also support a contrary finding. *See Kenney*, 963 N.W.2d at 223. The commissioner's arguments essentially ask us to reweigh conflicting evidence that supports a contrary finding, which we cannot do. *Id.* CAP did not clearly err in granting Lenz's petition for provisional discharge, finding the commissioner failed to prove by clear and convincing evidence that provisional discharge should be denied.

**Affirmed.**

9