*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1288**

In the Matter of the Civil Commitment of: Terry Lee Branson.

**Filed January 26, 2026**
**Affirmed**
**Bentley, Judge**

Commitment Appeal Panel
File No. AP24-9144

Michael C. Hager, Minneapolis, Minnesota (for appellant Terry Lee Branson)

Keith Ellison, Attorney General, Mara Sybesma, Assistant Attorney General, St. Paul, Minnesota (for respondent Executive Board of Direct Care and Treatment)

Brad Johnson, Anoka County Attorney, Ellen Lavigne, Assistant County Attorney, Anoka, Minnesota (for respondent Anoka County)

Considered and decided by Schmidt, Presiding Judge; Bentley, Judge; and Segal, Judge.[*]

**NONPRECEDENTIAL OPINION**

**BENTLEY**, Judge

This appeal stems from a decision of the commitment appeal panel (CAP), denying and dismissing appellant's petition for transfer, provisional discharge, or discharge. Appellant argues that the CAP should have granted his petition because he contends he no longer suffers from the condition underlying his commitment and he is not receiving

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

appropriate treatment in his current setting. We conclude that appellant is not entitled to relief from the CAP's decision because he did not present competent evidence in support of his assertion regarding his clinical status. Additionally, the CAP is not the proper forum to consider his right-to-treatment argument. We therefore affirm.

**FACTS**

The following facts, taken from the record before the CAP and the transcript of the CAP hearing and stated in the light most favorable to appellant Terry Lee Branson, frame our consideration of the issues raised on appeal.

Branson has been in state custody since 1993, pursuant to criminal sentencing orders or a 2009 civil commitment order adjudicating him as a person who has a sexual psychopathic personality (SPP) and as a sexually dangerous person (SDP). He has a long history of sexual misconduct, including six felony convictions for criminal sexual conduct.[1] Since completing his terms of imprisonment in 2013, he has resided at the Minnesota Sex Offender Program (MSOP) in Moose Lake under the 2009 order. Branson first consented to participate in treatment in May 2022. He participated intermittently and then withdrew his consent in February 2025.

---

[1] Branson's background and offense history are summarized in *In re Civ. Commitment of Branson*, No. A15-0394, 2015 WL 4878012, *1-3 (Minn. App. Aug. 17, 2015), *rev. denied* (Minn. Oct. 20, 2015).

Branson petitioned the special review board (SRB) for a reduction in custody in June 2023.[2] He appeared in front of the SRB for a hearing in August 2024. The SRB recommended that Branson be denied transfer, provisional discharge, or discharge. Branson then filed a petition for rehearing and reconsideration with the CAP in October 2024.

At a hearing before the CAP in June 2025, Branson testified on his own behalf. He stated that he was not receiving treatment at MSOP for his underlying mental illnesses and that he stopped attending individual therapy because his old therapist left and, in his opinion, his new one was not qualified. He also testified that his behavior had improved and that he believed his sexual sadism diagnosis was in remission, citing his advanced age and his reduced interest in sexual behavior.

Expert witness Dr. Darci Wikelius testified that a reduction in custody was not appropriate because Branson's "progress has been inconsistent and limited" and "it does not appear that he's addressed his risk factors." She did not agree that Branson's underlying disorders were in remission. She also testified that, while it is "not ideal" that MSOP does not offer as many focused treatment groups as it used to, Branson does have opportunities to work on his underlying mental illnesses at MSOP. At the end of the hearing, the commissioner[3] moved to dismiss Branson's petition under Minnesota Rule of Civil

---

[2] Branson has previously filed other appeals seeking a reduction in custody. *See In re Civ. Commitment of Branson*, No. A18-1532, 2019 WL 1105067 (Minn. App. Mar. 11, 2019); *Branson*, 2015 WL 4878012.

[3] Between the evidentiary hearing and this appeal, authority over MSOP transferred from the Commissioner of Human Services to the Executive Board of Direct Care and

Procedure 41.02(b), which provides that a party responding to a legal action "may move for a dismissal on the ground that upon the facts and the law, the [petitioner] has shown no right to relief."

The CAP denied Branson's request for transfer, provisional discharge, or discharge and granted the commissioner's motion to dismiss under rule 41.02(b).

Branson appeals.

## DECISION

The Minnesota Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities (MCTA) governs petitions for a reduction in custody, such as for transfer, provisional discharge, or discharge. *See* Minn. Stat. §§ 253D.01-.36 (2024). A person seeking a transfer from MSOP to a lower-security facility bears the burdens of production and persuasion and must prove by a preponderance of the evidence that "transfer is appropriate." Minn. Stat. § 253D.28, subd. 2(e); *Foster v. Jesson*, 857 N.W.2d 545, 548 (Minn. App. 2014). As for petitions for a provisional discharge or discharge, they proceed in two phases. *See Larson v. Jesson*, 847 N.W.2d 531, 535 (Minn. App. 2014). At the first-phase hearing, the committed person must satisfy their burden of production by presenting a prima facie case that they are "capable of making an acceptable

Treatment. Minn. Stat. § 246C.04, subds. 1-3 (2024). Therefore, the respondent on appeal is the Executive Board of Direct Care and Treatment. *See* Minn. Stat. § 15.039, subd. 4 (2024) ("Any proceeding . . . pending on the effective date of a transfer of responsibilities may be conducted and completed by the new agency in the same manner . . . and with the same effect, as though it involved or were commenced and conducted or completed by the former agency prior to the transfer."). Anoka County is also a respondent in the appeal, but only the executive board filed a responsive brief.

4

adjustment to open society." Minn. Stat. § 253D.30, subd. 1(a); *see Larson*, 847 N.W.2d at 535. At the end of this hearing, the commissioner may move to dismiss the petition under rule 41.02(b). *Larson*, 847 N.W.2d at 535. The CAP "is required to view the evidence . . . in a light most favorable to the committed person when a rule 41.02(b) motion is made to dismiss a petition for discharge." *Foster*, 857 N.W.2d at 548 (emphasis omitted) (quotation omitted). If the person satisfies their burden of production, "the proceeding advances to a second-phase hearing and the burden shifts to the commissioner, who bears a burden of persuasion on the merits of a discharge petition." *Larson*, 847 N.W.2d at 535 (quotation omitted). Appellate courts apply de novo review to the dismissal of a petition for transfer, provisional discharge, or discharge under rule 41.02(b). *See In re Civ. Commitment of Edwards*, 933 N.W.2d 796, 801-03 (Minn. App. 2019), *rev. denied* (Minn. Oct. 15, 2019).[4]

Branson states that his "principal argument is that he has aged out and gone into remission on the underlying factors that led to his offenses over 32 years ago." He also asserts that "any further treatment, given the nature of MSOP treatment, is not likely to be designed to address the diagnosed illness for which he was committed." Because he maintains that the nature of the treatment at MSOP is no longer relevant to his condition, he argues that he should be transferred or discharged. And he argues that the SRB and CAP

---

[4] Appellate courts review the CAP's denial of a petition absent a rule 41.02(b) dismissal for clear error. *Larson*, 847 N.W.2d at 534. In this case, the CAP both denied Branson's petition and granted the commissioner's petition to dismiss under 41.02(b). We apply the de novo standard of review because, even under that greater level of scrutiny, we conclude that Branson has not established a basis to reverse the CAP's decision.

improperly failed to consider his challenges to the nature of the treatment he is receiving at MSOP.

We first consider his arguments in the context of the statutory requirements for transfer and discharge. We then address Branson's argument that the CAP erred in declining to consider his arguments regarding the nature of treatment he is receiving at MSOP.

**I**

Branson argues that he should be transferred to a lower-security facility within the MSOP, provisionally discharged, or discharged because he no longer suffers from sexual sadism. We understand this argument to be challenging the CAP's conclusions with respect to his clinical progress and present treatment needs, which are statutory factors the CAP must address with respect to either a petition to transfer or discharge.

A person who is committed as an SPP or SDP may be transferred to CPS only if "the transfer is appropriate." Minn. Stat. § 253D.29, subd. 1(a). And in determining whether transfer is appropriate, the CAP must consider "the person's clinical progress and present treatment needs." *Id.*, subd. 1(b)(1).[5] With respect to provisional discharge, the MCTA provides that a SPP or SDP "shall not" be provisionally discharged unless they are "capable of making an acceptable adjustment to open society." Minn. Stat. § 253D.30,

_____

[5] The CAP also must consider "the need for security to accomplish continuing treatment; . . . the need for continued institutionalization; . . . which other treatment program can best meet the person's needs; and . . . whether transfer can be accomplished with a reasonable degree of safety for the public." *Id.*, subd. 1(b)(2)-(5).

subd. 1(a).[6] To make that determination, the CAP must consider "whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the committed person's current treatment setting." Minn. Stat. § 253D.30, subd. 1(b)(1).[7]

With respect to transfer, the CAP considered Branson's clinical progress and treatment needs and found that "the record as a whole shows [Branson] is a non-participant in treatment." The CAP referenced reports from the court examiner, Branson's treatment team, and the risk assessor, all of which the CAP determined credibly demonstrated that Branson "has significant remaining treatment needs that remain unaddressed, including sexuality and risk management." With respect to provisional discharge, the panel considered whether Branson's "course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the current setting," and determined that Branson's "minimal and inconsistent treatment participation shows that he has not progressed sufficiently in treatment and is not able to manage his risk."

Branson does not directly address the statutory factors but makes a broader argument that, if he no longer suffers from sexual sadism, his custody status must be

---

[6] If the petitioner does not meet the statutory requirements for provisional discharge, they cannot meet the requirements for full discharge. *See Larson*, 847 N.W.2d at 536 ("[Appellant] has failed to produce evidence that, if proven, would entitle him to a provisional discharge. . . . Consequently, [appellant] has also failed to produce evidence that, if proven, would entitle him to a discharge.").

[7] The CAP must also consider "whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community." *Id.*, subd. 1(b)(2).

reduced. Branson references caselaw providing that, once a committed person no longer suffers from the condition underlying the commitment, their continued detention may violate due process, regardless of whether they may pose a danger to the community. *See Foucha v. Louisiana*, 504 U.S. 71, 82-83 (1992) (concluding that "indefinite detention of insanity acquittees who are not mentally ill but who do not prove they would not be dangerous to others" violates due process); *Hince v. O'Keefe*, 632 N.W.2d 577, 583 (Minn. 2001) ("Without the mental disorder component, commitment would be based on dangerousness alone, which does not satisfy due process.").

It may be that, if Branson were no longer suffering from sexual sadism, due process would call for a reduction in custody or discharge. But Branson did not present competent evidence that he no longer suffers from sexual sadism or that he is in remission. Even if we view the evidence in the light most favorable to his petition, as we must here, *Foster*, 857 N.W.2d at 548, we cannot conclude that Branson met his burden for either transfer or discharge.

In support of his position that his sexual sadism is in remission, Branson cites his advanced age and his testimony that he is no longer interested in sex and no longer interested in reoffending. But a petitioner's uncorroborated assertions are insufficient, by themselves, to show that a committed person has met their burden. *See In re Civ. Commitment of Poole*, 921 N.W.2d 62, 68-69 (Minn. App. 2018), *rev. denied* (Minn. Jan. 15, 2019). Other evidence in the record contradicts Branson's assertion of his current condition. As of Branson's last annual treatment progress report, he had four active diagnoses—sexual sadism disorder, in a controlled environment; antisocial personality

disorder; alcohol use disorder, moderate, in sustained remission, in a controlled environment; and problems related to other legal circumstances (i.e. civil commitment). And when the expert who testified at Branson's hearing was asked about Branson's diagnoses, she stated that in the records she received she did not find anything to support that Branson had been able to address them.

The record also shows, as the CAP concluded, that Branson has refused to participate meaningfully in treatment. In the time since his commitment at MSOP in 2013, Branson has attended group treatment sessions only periodically, from May 2022 to October 2023, and October 2024 to December 2024. He withdrew his consent to participate in treatment in February 2025. The lack of evidence of clinical progress and meaningful participation in treatment belie his assertions of remission.

Branson does not meaningfully challenge any other aspect of the CAP's decision on appeal. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (concluding that arguments not briefed on appeal are waived). Still, we carefully reviewed the record and considered all the statutory factors. We agree with the CAP that Branson has not met his burden to establish that "transfer is appropriate," Minn. Stat. § 253D.29, subd. 1(a), and has not made a prima facie case that he is "capable of making an acceptable adjustment to open society," as required for provisional discharge or discharge, Minn. Stat. §§ 253D.30, subd. 1(a), .31; *Larson*, 847 N.W.2d at 535.

## II

We next turn to Branson's argument that the CAP erred in declining to consider his challenges to the nature of the treatment he is receiving at MSOP. Again, we discern no error.

It is well-established that the CAP is not the appropriate venue to challenge adequacy of treatment. *In re Civ. Commitment of Navratil*, 799 N.W.2d 643, 650-51 (Minn. App. 2011) (stating that "the commitment process is not the proper avenue for asserting a right-to-treatment argument," and "a committed person has adequate avenues outside the commitment process for asserting a right-to-treatment issue"), *rev. denied* (Minn. Aug. 24, 2011); *In re Kolodrubetz*, 411 N.W.2d 528, 533 (Minn. App. 1987) ("[C]ommitting courts may not involve themselves in treatment decisions."), *rev. denied* (Minn. Nov. 6, 1987).

Branson argues that, under Minnesota Statutes section 253B.22 (2024), titled "Review Boards," the SRB may hear his right-to-treatment argument because it "is the entity authorized and responsible for safeguarding that treatment meets standards and the needs of the patient." But the review boards established under section 253B.22 are separate from the *special* review boards established under section 253B.18, subdivision 4c (2024), which are specifically authorized to "hear and consider all petitions for a reduction in custody or to appeal a revocation of provisional discharge." The SRB does not have statutory authority to address a patient's treatment concerns. Minn. Stat. § 253B.18, subd. 4c. Therefore, Branson's argument is unavailing.

**Affirmed.**